Justice GINSBURG delivered the opinion of the Court.
The Sixth Amendment to the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." Does the Sixth Amendment's speedy trial guarantee apply to the sentencing phase of a criminal prosecution? That is the sole question this case presents. We hold that the guarantee protects the accused from arrest or indictment through trial, but does not apply once a defendant has been found guilty at trial or has pleaded guilty to criminal charges. For inordinate delay in sentencing, although the Speedy Trial Clause does not govern, a defendant may have other recourse, including, in appropriate circumstances, tailored relief under the Due Process Clauses of the Fifth and Fourteenth Amendments. Petitioner Brandon Betterman, however, advanced in this Court only a Sixth Amendment speedy trial claim. He did not preserve a due process challenge. See Tr. of Oral Arg. 19. We, therefore, confine this opinion to his Sixth Amendment challenge.
I
Ordered to appear in court on domestic assault charges, Brandon Betterman failed to show up and was therefore charged with bail jumping. 378 Mont. 182, 184, 342 P.3d 971, 973 (2015). After pleading guilty to the bail-jumping charge, he was jailed for over 14 months awaiting sentence on that conviction. Id., at 184-185, 342 P.3d, at 973-974. The holdup, in large part, was due to institutional delay: the presentence report took nearly five months to complete; the trial court took several months to deny two presentence motions (one seeking dismissal of the charge on the ground of delay); and the court was slow *1613 in setting a sentencing hearing. Id., at 185, 195, 342 P.3d, at 973-974, 980. Betterman was eventually sentenced to seven years' imprisonment, with four of those years suspended. Id., at 185, 342 P.3d, at 974.
Arguing that the 14-month gap between conviction and sentencing violated his speedy trial right, Betterman appealed. The Montana Supreme Court affirmed his conviction and sentence, ruling that the Sixth Amendment's Speedy Trial Clause does not apply to postconviction, presentencing delay. Id., at 188-192, 342 P.3d, at 975-978.
We granted certiorari, 577 U.S. ----, 136 S.Ct. 582, 193 L.Ed.2d 464 (2015), to resolve a split among courts over whether the Speedy Trial Clause applies to such delay.[1] Holding that the Clause does not apply to delayed sentencing, we affirm the Montana Supreme Court's judgment.
II
Criminal proceedings generally unfold in three discrete phases. First, the State investigates to determine whether to arrest and charge a suspect. Once charged, the suspect stands accused but is presumed innocent until conviction upon trial or guilty plea. After conviction, the court imposes sentence. There are checks against delay throughout this progression, each geared to its particular phase.
In the first stage-before arrest or indictment, when the suspect remains at liberty-statutes of limitations provide the primary protection against delay, with the Due Process Clause as a safeguard against fundamentally unfair prosecutorial conduct. United States v. Lovasco, 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) ; see id., at 795, n. 17, 97 S.Ct. 2044 (Due Process Clause may be violated, for instance, by prosecutorial delay that is "tactical" or "reckless" (internal quotation marks omitted)).
The Sixth Amendment's Speedy Trial Clause homes in on the second period: from arrest or indictment through conviction. The constitutional right, our precedent holds, does not attach until this phase begins, that is, when a defendant is arrested or formally accused. United States v. Marion, 404 U.S. 307, 320-321, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Today we hold that the right detaches upon conviction, when this second stage ends.[2]
*1614 Prior to conviction, the accused is shielded by the presumption of innocence, the "bedrock[,] axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law." Reed v. Ross, 468 U.S. 1, 4, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984) (internal quotation marks omitted). The Speedy Trial Clause implements that presumption by "prevent[ing] undue and oppressive incarceration prior to trial, ... minimiz[ing] anxiety and concern accompanying public accusation [,] and ... limit[ing] the possibilities that long delay will impair the ability of an accused to defend himself." Marion, 404 U.S., at 320, 92 S.Ct. 455 (internal quotation marks omitted). See also Barker v. Wingo, 407 U.S. 514, 532-533, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). As a measure protecting the presumptively innocent, the speedy trial right-like other similarly aimed measures-loses force upon conviction. Compare In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (requiring "proof beyond a reasonable doubt of every fact necessary to constitute the crime"), with United States v. O'Brien, 560 U.S. 218, 224, 130 S.Ct. 2169, 176 L.Ed.2d 979 (2010) ("Sentencing factors ... can be proved ... by a preponderance of the evidence."). Compare also 18 U.S.C. § 3142(b) (bail presumptively available for accused awaiting trial) with § 3143(a) (bail presumptively unavailable for those convicted awaiting sentence).
Our reading comports with the historical understanding. The speedy trial right, we have observed, "has its roots at the very foundation of our English law heritage. Its first articulation in modern jurisprudence appears to have been made in Magna Carta (1215)...." Klopfer v. North Carolina, 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Regarding the Framers' comprehension of the right as it existed at the founding, we have cited Sir Edward Coke's Institutes of the Laws of England. See id., at 223-225, and nn. 8, 12-14, 18, 87 S.Ct. 988. Coke wrote that "the innocent shall not be worn and wasted by long imprisonment, but ... speedily come to his tria[l] ." 1 E. Coke, Second Part of the Institutes of the Laws of England 315 (1797) (emphasis added).
Reflecting the concern that a presumptively innocent person should not languish under an unresolved charge, the Speedy Trial Clause guarantees "the accused " "the right to a speedy ... trial ." U.S. Const., Amdt. 6 (emphasis added). At the founding, "accused" described a status preceding "convicted." See, e.g., 4 W. Blackstone, Commentaries on the Laws of England 322 (1769) (commenting on process in which "persons accused of felony ... were tried ... and convicted " (emphasis added)). And "trial" meant a discrete episode after which judgment (i.e., sentencing) would follow. See, e.g., id., at 368 ("We are now to consider the next stage of criminal prosecution, after trial and conviction are past ...: which is that of judgment .").[3]
This understanding of the Sixth Amendment language-"accused" as distinct from "convicted," and "trial" as separate from "sentencing"-endures today. See, e.g., Black's Law Dictionary 26 (10th ed. 2014) (defining "accused" as "a person who has *1615 been arrested and brought before a magistrate or who has been formally charged " (emphasis added)); Fed. Rule Crim. Proc. 32 (governing "Sentencing and Judgment," the rule appears in the chapter on "Post-Conviction Procedures," which follows immediately after the separate chapter headed "Trial").[4]
This Court's precedent aligns with the text and history of the Speedy Trial Clause. Detaining the accused pretrial, we have said, disadvantages him, and the imposition is "especially unfortunate" as to those "ultimately found to be innocent." Barker, 407 U.S., at 532-533, 92 S.Ct. 2182. And in Marion, 404 U.S., at 320, 92 S.Ct. 455 addressing "the major evils protected against by the speedy trial guarantee," we observed: "Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." We acknowledged in Marion that even pre-arrest-a stage at which the right to a speedy trial does not arise-the passage of time "may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself." Id., at 321, 92 S.Ct. 455. Nevertheless, we determined, "this possibility of prejudice at trial is not itself sufficient reason to wrench the Sixth Amendment from its proper [arrest or charge triggered] context." Id., at 321-322, 92 S.Ct. 455. Adverse consequences of postconviction delay, though subject to other checks, see infra, at 1617 - 1618, are similarly outside the purview of the Speedy Trial Clause.[5]
The sole remedy for a violation of the speedy trial right-dismissal of the charges, see Strunk v. United States, 412 U.S. 434, 440, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973) ; Barker, 407 U.S., at 522, 92 S.Ct. 2182 -fits the preconviction focus of the Clause. It would be an unjustified windfall, in most cases, to remedy sentencing delay by vacating validly obtained convictions. Betterman concedes that a dismissal remedy ordinarily would not be in order once a defendant has been convicted. See Tr. of Oral Arg. 5-6; cf. Bozza v. United States, 330 U.S. 160, 166, 67 S.Ct. 645, 91 L.Ed. 818 (1947) ("[A]n error in passing the sentence" does not permit a convicted defendant "to escape punishment altogether.").[6]
*1616 The manner in which legislatures have implemented the speedy trial guarantee matches our reading of the Clause. Congress passed the Speedy Trial Act of 1974, 18 U.S.C. § 3161 et seq.,"to give effect to the sixth amendment right." United States v. MacDonald, 456 U.S. 1, 7, n. 7, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982) (quoting S.Rep. No. 93-1021, p. 1 (1974)). "The more stringent provisions of the Speedy Trial Act have mooted much litigation about the requirements of the Speedy Trial Clause...." United States v. Loud Hawk, 474 U.S. 302, 304, n. 1, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) (citation omitted). With certain exceptions, the Act directs-on pain of dismissal of the charges, § 3162(a)-that no more than 30 days pass between arrest and indictment, § 3161(b), and that no more than 70 days pass between indictment and trial, § 3161(c)(1). The Act says nothing, however, about the period between conviction and sentencing, suggesting that Congress did not regard that period as falling within the Sixth Amendment's compass. Numerous state analogs similarly impose precise time limits for charging and trial; they, too, say nothing about sentencing.[7]
Betterman asks us to take account of the prevalence of guilty pleas and the resulting scarcity of trials in today's justice system. See Lafler v. Cooper, 566 U.S. ----, ----, 132 S.Ct. 1376, 1381, 182 L.Ed.2d 398 (2012) ( "[C]riminal justice today is for the most part a system of pleas, not a system of trials."). The sentencing hearing has largely replaced the trial as the forum for dispute resolution, Betterman urges. Therefore, he maintains, the concerns supporting the right to a speedy trial now recommend a speedy sentencing hearing. The modern reality, however, does not bear on the presumption-of-innocence protection at the heart of the Speedy Trial Clause. And factual disputes, if any there be, at sentencing, do not go to the question of guilt; they are geared, instead, to ascertaining the proper sentence within boundaries set by statutory minimums and maximums.
Moreover, a central feature of contemporary sentencing in both federal and state courts is preparation by the probation office, and review by the parties and the court, of a presentence investigation report. See 18 U.S.C. § 3552 ; Fed. Rule Crim. Proc. 32(c) -(g) ; 6 W. LaFave, J. Israel, N. King, & O. Kerr, Criminal Procedure § 26.5(b), pp. 1048-1049 (4th ed. 2015) (noting reliance on presentence reports in federal and state courts). This aspect of the system requires some amount of wholly reasonable presentencing delay.[8] Indeed, many-if not most-disputes *1617 are resolved, not at the hearing itself, but rather through the presentence-report process. See N. Demleitner, D. Berman, M. Miller, & R. Wright, Sentencing Law and Policy 443 (3d ed. 2013) ("Criminal justice is far more commonly negotiated than adjudicated; defendants and their attorneys often need to be more concerned about the charging and plea bargaining practices of prosecutors and the presentence investigations of probation offices than ... about the sentencing procedures of judges or juries."); cf. Bierschbach & Bibas, Notice-and-Comment Sentencing, 97 Minn. L. Rev. 1, 15 (2012) ("[T]oday's sentencing hearings ... rubber-stamp plea-bargained sentences.").
As we have explained, at the third phase of the criminal-justice process, i.e., between conviction and sentencing, the Constitution's presumption-of-innocence-protective speedy trial right is not engaged.[9] That does not mean, however, that defendants lack any protection against undue delay at this stage. The primary safeguard comes from statutes and rules. The federal rule on point directs the court to "impose sentence without unnecessary delay." Fed. Rule Crim. Proc. 32(b)(1). Many States have provisions to the same effect,[10] and some States prescribe numerical time limits.[11] Further, as at the prearrest stage, due process serves as a backstop against exorbitant delay. See supra, at 1613. After conviction, a defendant's due process right to liberty, while diminished, is still present. He retains an interest in a sentencing proceeding that is fundamentally fair. But because Betterman advanced no due process claim here, see *1618 supra, at 1612, we express no opinion on how he might fare under that more pliable standard. See, e.g., United States v. $8,850, 461 U.S. 555, 562-565, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983).[12]
The course of a criminal prosecution is composed of discrete segments. During the segment between accusation and conviction, the Sixth Amendment's Speedy Trial Clause protects the presumptively innocent from long enduring unresolved criminal charges. The Sixth Amendment speedy trial right, however, does not extend beyond conviction, which terminates the presumption of innocence. The judgment of the Supreme Court of Montana is therefore
Affirmed.
Justice THOMAS, with whom Justice ALITO joins, concurring.
I agree with the Court that the Sixth Amendment's Speedy Trial Clause does not apply to sentencing proceedings, except perhaps to bifurcated sentencing proceedings where sentencing enhancements operate as functional elements of a greater offense. See ante, at 1612 - 1613, and n. 2. I also agree with the Court's decision to reserve judgment on whether sentencing delays might violate the Due Process Clause. Ante, at 1617 - 1618. Brandon Betterman's counsel repeatedly disclaimed that he was raising in this Court a challenge under the Due Process Clause. See Tr. of Oral Arg. 7-8 ("We haven't included that. We didn't include that in the question presented, Your Honor"); id., at 8 ("[W]e are not advancing that claim here"); id., at 19 ("[W]e didn't preserve a-a due process challenge. Our challenge is solely under the Sixth Amendment").
We have never decided whether the Due Process Clause creates an entitlement to a reasonably prompt sentencing hearing. Today's opinion leaves us free to decide the proper analytical framework to analyze such claims if and when the issue is properly before us.
Justice SOTOMAYOR suggests that, for such claims, we should adopt the factors announced in Barker v. Wingo, 407 U.S. 514, 530-533, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Post, at 1619 (concurring opinion). I would not prejudge that matter. The factors listed in Barker may not necessarily translate to the delayed sentencing context. The Due Process Clause can be satisfied where a State has adequate procedures to redress an improper deprivation of liberty or property. See Parratt v. Taylor, 451 U.S. 527, 537, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In unusual cases where trial courts fail to sentence a defendant within a reasonable time, a State might fully satisfy due process by making traditional extraordinary legal remedies, such as mandamus, available. Or, much like the federal Speedy Trial Act regulates trials, see 18 U.S.C. § 3161, a State might remedy improper sentencing delay by statute.* And a person who sleeps on these remedies, as Betterman did, may simply have no right to complain that his sentencing was delayed. We should await a proper *1619 presentation, full briefing, and argument before taking a position on this issue.
The Court thus correctly "express[es] no opinion on how [Betterman] might fare" under the Due Process Clause. Ante, at 1618.

Compare Burkett v. Cunningham, 826 F.2d 1208, 1220 (C.A.3 1987) ; Juarez-Casares v. United States, 496 F.2d 190, 192 (C.A.5 1974) ; Ex parte Apicella, 809 So.2d 865, 869 (Ala.2001) ; Gonzales v. State, 582 P.2d 630, 632 (Alaska 1978) ; Jolly v. State, 358 Ark. 180, 191, 189 S.W.3d 40, 45 (2004) ; Trotter v. State, 554 So.2d 313, 316 (Miss.1989), superseded by statute on other grounds, Miss.Code Ann. § 99-35-101 (2008) ; Commonwealth v. Glass, 526 Pa. 329, 334, 586 A.2d 369, 371 (1991) ; State v. Leyva, 906 P.2d 910, 912 (Utah App.1995) ; and State v. Dean, 148 Vt. 510, 513, 536 A.2d 909, 912 (1987) (Speedy Trial Clause applies to sentencing delay), with United States v. Ray, 578 F.3d 184, 198-199 (C.A.2 2009) ; State v. Drake, 259 N.W.2d 862, 866 (Iowa 1977), abrogated on other grounds by State v. Kaster, 469 N.W.2d 671, 673 (Iowa 1991) ; State v. Pressley, 290 Kan. 24, 29, 223 P.3d 299, 302 (2010) ; State v. Johnson, 363 So.2d 458, 460 (La.1978) ; 378 Mont. 182, 192, 342 P.3d 971, 978 (2015) (case below); and Ball v. Whyte, 170 W.Va. 417, 418, 294 S.E.2d 270, 271 (1982) (Speedy Trial Clause does not apply to sentencing delay).

We reserve the question whether the Speedy Trial Clause applies to bifurcated proceedings in which, at the sentencing stage, facts that could increase the prescribed sentencing range are determined (e.g., capital cases in which eligibility for the death penalty hinges on aggravating factor findings). Nor do we decide whether the right reattaches upon renewed prosecution following a defendant's successful appeal, when he again enjoys the presumption of innocence.

As Betterman points out, at the founding, sentence was often imposed promptly after rendition of a verdict. Brief for Petitioner 24-26. But that was not invariably the case. For the court's "own convenience, or on cause shown, [sentence could be] postpone[d] ... to a future day or term." 1 J. Bishop, Criminal Procedure § 1291, p. 767 (3d ed. 1880) (footnote omitted). See also 1 J. Chitty, A Practical Treatise on the Criminal Law 481 (1819) ("The sentence ... is usually given immediately after the conviction, but the court may adjourn to another day and then give judgment.").

We do not mean to convey that provisions of the Sixth Amendment protecting interests other than the presumption of innocence are inapplicable to sentencing. In this regard, we have held that the right to defense counsel extends to some postconviction proceedings. See Mempa v. Rhay, 389 U.S. 128, 135-137, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967).

Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), on which Betterman relies, is not to the contrary. There we concluded that a defendant, though already convicted and imprisoned on one charge, nevertheless has a right to be speedily brought to trial on an unrelated charge. Id., at 378, 89 S.Ct. 575. "[T]here is reason to believe," we explained in Smith, "that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large." Id., at 379. Smith is thus consistent with comprehension of the Speedy Trial Clause as protective of the presumptively innocent.

Betterman suggests that an appropriate remedy for the delay in his case would be reduction of his sentence by 14 months-the time between his conviction and sentencing. See Tr. of Oral Arg. 6. We have not read the Speedy Trial Clause, however, to call for a flexible or tailored remedy. Instead, we have held that violation of the right demands termination of the prosecution.

See, e.g., Alaska Rule Crim. Proc. 45 (2016); Ark. Rules Crim. Proc. 28.1 to 28.3 (2015); Cal.Penal Code Ann. § 1382 (West 2011) ; Colo.Rev.Stat. § 18-1-405 (2015) ; Conn. Rules Crim. Proc. 43-39 to 43-42 (2016); Fla. Rule Crim. Proc. 3.191 (2016); Haw. Rule Crim. Proc. 48 (2016); Ill. Comp. Stat., ch. 725, § 5/103-5 (West 2014) ; Ind. Rule Crim. Proc. 4 (2016); Iowa Rule Crim. Proc. 2.33 (2016); Kan. Stat. Ann. § 22-3402 (2014 Cum. Supp.); La.Code Crim. Proc. Ann., Art. 701 (West Cum. Supp. 2016); Mass. Rule Crim. Proc. 36 (2016); Neb.Rev.Stat. §§ 29-1207, 29-1208 (2008) ; Nev.Rev.Stat. § 178.556 (2013); N.Y. Crim. Proc. Law Ann. § 30.30 (West Cum. Supp. 2016); Ohio Rev.Code Ann. §§ 2945.71 to 2945.73 (Lexis 2014) ; Ore.Rev.Stat. §§ 135.745, 135.746, 135.748, 135.750, 135.752 (2015); Pa. Rule Crim. Proc. 600 (2016); S.D. Codified Laws § 23A-44-5.1 (Cum. Supp. 2015); Va.Code Ann. § 19.2-243 (2015) ; Wash. Rule Crim. Proc. 3.3 (2016) ; Wis. Stat. § 971.10 (2011-2012); Wyo. Rule Crim. Proc. 48 (2015).

"In federal prosecutions," the Solicitor General informs us, "the median time between conviction and sentencing in 2014 was 99 days." Brief for United States as Amicus Curiae 31, n. 5. A good part of this time no doubt was taken up by the drafting and review of a presentence report. See Fed. Rule Crim. Proc. 32(c) -(g) (detailing presentence-report process).

It is true that during this period the defendant is often incarcerated. See, e.g., § 3143(a) (bail presumptively unavailable for convicted awaiting sentence). Because postconviction incarceration is considered punishment for the offense, however, a defendant will ordinarily earn time-served credit for any period of presentencing detention. See § 3585(b) ; A. Campbell, Law of Sentencing § 9:28, pp. 444-445, and n. 4 (3d ed. 2004) ("[State c]rediting statutes routinely provide that any period of time during which a person was incarcerated in relation to a given offense be counted toward satisfaction of any resulting sentence."). That such detention may occur in a local jail rather than a prison is of no constitutional moment, for a convicted defendant has no right to serve his sentence in the penal institution he prefers. See Meachum v. Fano, 427 U.S. 215, 224-225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

See, e.g., Alaska Rule Crim. Proc. 32(a) (2016); Colo. Rule Crim. Proc. 32(b)(1) (2015); Del. Super. Ct. Crim. Rule 32(a)(1) (2003); Fla. Rule Crim. Proc. 3.720 (2016); Haw. Rule Penal Proc. 32 (a) (2016); Kan. Stat. Ann. § 22-3424(c) (2014 Cum. Supp.); Ky. Rule Crim. Proc. 11.02(1) (2016); La. Code Crim. Proc. Ann., Art. 874 (West 2016) ; Me. Rule Crim. Proc. 32(a)(1) (2015); Mass. Rule Crim. Proc. 28(b) (2016); Mich. Ct. Rule 6.425(E)(1) (2011); Mo. Sup. Ct. Rule 29.07(b)(1) (2011); Mont. Code Ann. § 46-18-115 (2015); Nev. Rev. Stat. § 176.015(1) (2013); N.H. Rule Crim. Proc. 29(a)(1) (2016); N.J. Ct. Rule 3:21-4(a) (2016); N.Y. Crim. Proc. Law Ann. § 380.30(1) (West Cum. Supp. 2016); N.D. Rule Crim. Proc. 32(a)(1) (2011); Ohio Rule Crim. Proc. 32(A) (2013); R.I. Super. Ct. Rule 32(a)(1) (2015); S.D. Codified Laws § 23A-27-1 (Cum. Supp. 2015); Vt. Rule Crim. Proc. 32(a)(1) (2010); Va. Sup. Ct. Rule 3A:17.1(b) (2012); W. Va. Rule Crim. Proc. 32(a) (2006); Wyo. Rule Crim. Proc. 32(c)(1) (2015).

See, e.g., Ariz. Rule Crim. Proc. 26.3(a)(1) (2011); Ark. Rule Crim. Proc. 33.2 (2015); Cal.Penal Code Ann. § 1191 (West 2015) ; Ind. Rule Crim. Proc. 11 (2016); N.M. Rule Crim. Proc. 5-701(B) (2016); Ore. Rev. Stat. § 137.020(3) (2015); Pa. Rule Crim. Proc. 704(A)(1) (2016); Tenn. Code Ann. § 40-35-209(a) (2014); Utah Rule Crim. Proc. 22(a) (2015); Wash. Rev. Code § 9.94A.500(1) (2016 Cum. Supp.). These sentencing provisions are separate from state analogues to the Speedy Trial Act. See supra, at 1616, and n. 7.

Relevant considerations may include the length of and reasons for delay, the defendant's diligence in requesting expeditious sentencing, and prejudice.
* * *

The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.