******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* HIRAL PATEL
(SC 160420)

The petition of the defendant, filed March 23, 2017, for review of the trial court order revoking bail pending sentencing, having been presented to the court, it is hereby ordered granted but the relief requested is denied.

November 14, 2017

PER CURIAM. Article first, § 8, of the Connecticut constitution provides that "[i]n all criminal prosecutions, the accused shall have a right . . . to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great . . . ." The principal issue before this court is whether the constitutional right to bail is extinguished when a defendant has been found guilty of a criminal offense or whether it continues until the defendant has been sentenced for that offense.

The defendant, Hiral Patel, was released pretrial on a $1 million bond, which the court increased to $1.5 million following the jury's verdict finding him guilty of murder in violation of General Statutes § 53a-54a, and other offenses, pending sentencing. Six weeks later, pursuant to the state's request, the court revoked the defendant's bail, solely on the ground that it lacked authority to release him under General Statutes § 54-63f.[1] The defendant now seeks review of that order.[2] He contends that our state constitution affords him a right to bail until sentence is imposed, and, accordingly, to the extent that § 54-63f bars the release of persons who have been convicted of homicide offenses pending sentencing, it is unconstitutional. In light of the significance of the issue and the constraints of page limitations for petitions for review; see Practice Book § 66-2 (b); we asked the parties to file supplemental briefs elaborating upon this issue, as well as a potential jurisdictional obstacle to review. We conclude that we have jurisdiction over the petition and grant review but conclude that the right to bail under article first, § 8, of the Connecticut constitution is extinguished upon conviction, i.e., a finding of guilt, accepted by the court.

I

We begin with the state's contention that there are two jurisdictional impediments to our review of the merits of the petition. First, the state contends that General Statutes § 54-63g and Practice Book § 78a-1, which the defendant has invoked as the basis for this court's jurisdiction, do not apply to postconviction bail orders. Section 54-63g provides in relevant part: "Any accused person or the state, aggrieved by an order of the Superior Court concerning release, may petition the Appellate Court for review of such order. . . ." Practice

Book § 78a-1 provides nearly identical language. The state contends that neither provision applies because, following the jury's verdict, the defendant is no longer "accused" but, instead, is "convicted." We disagree.

Although "accused" is a term historically and most commonly understood to mean a person charged with a crime; see, e.g., The Random House Dictionary of the English Language (1966); Webster's New Twentieth Century Dictionary (1964); it also has occasionally been given a more generic meaning, simply referring to a criminal defendant. See, e.g., Black's Law Dictionary (4th Ed. 1968) ("'[a]ccused' is the generic name for the defendant in a criminal case, and is more appropriate than either 'prisoner' or 'defendant' "); The American Heritage Dictionary of the English Language (1969) (defining "accused" as "[t]he generic term for the defendant or defendants in a criminal case").[3] The legislature has, on other occasions, used the term in its broader sense by prescribing postconviction rights and procedures for an "accused"; see, e.g., General Statutes §§ 54-96 and 54-151; including in the context of posting of bond to secure release pending appeal. See, e.g., General Statutes § 53-305. This court likewise has used the term in accordance with its broader meaning. See, e.g., *Consiglio* v. *Warden*, 153 Conn. 673, 676, 220 A.2d 269 (1966) (referring to right of "counsel for the accused" to point out facts and circumstances bearing on "the extent of the punishment to be imposed" at sentencing phase); *State* v. *Palko*, 122 Conn. 529, 533, 535, 537–38, 191 A. 320 (discussing arguments raised on appeal by "the accused"), aff'd, 302 U.S. 319, 58 S. Ct. 149, 82 L. Ed. 288 (1937).

We are persuaded that this broader meaning was intended in § 54-63g and the corresponding rule of practice. The text and history of the 1967 public act enacting § 54-63g suggest that "accused" and like terms were used in the public act simply to distinguish formally charged persons for whom release decisions continued to rest with the court from "arrested" persons for whom the newly created bail commission determined appropriate conditions of release.[4] See Public Acts 1967, No. 549 (P.A. 549) ("An Act Concerning Bail Procedures for Arrested Persons"); P.A. 549, § 1 (providing definition for " 'arrested person' " and " 'bail commissioner,' " but not "accused"); see also *State* v. *McCahill*, 261 Conn. 492, 507, 811 A.2d 667 (2002) (providing legislative history of P.A. 549). In *State* v. *McCahill*, supra, 510, this court reviewed an order relating to postconviction release under § 54-63g.[5] The official commentary to the rule of practice, which incorporated the statutory language in 2006, sanctions the procedure in that case. See W. Horton & K. Bartschi, Connecticut Practice Series: Connecticut Rules of Appellate Procedure (2009 Ed.) § 78a-1, p. 291. Finally, we observe that application of the more narrow meaning of "accused" either would result in disparate rights of review as between a defendant and the state, as no limiting language applies to the state, or, if deemed to similarly limit rights, would

deprive the state of a mechanism to challenge a trial court's postconviction order *releasing* a defendant. By according "accused" its more generic meaning, we avoid both untenable results. Therefore, the defendant properly sought review under § 54-63g and Practice Book § 78a-1.

The second potential jurisdictional hurdle arises from the fact that the trial court imposed sentence on the defendant while the present petition was pending before this court and the requested supplemental briefs had not yet been filed. Such an intervening act generally would render the petition moot, as we no longer can afford the defendant practical relief on the constitutional claim that he has advanced. See *State* v. *McElveen*, 261 Conn. 198, 204–205, 802 A.2d 74 (2002) (explaining necessity of practical relief to avoid mootness). Nonetheless, we are persuaded that the petition falls within the " 'capable of repetition, yet evading review' " exception to the mootness doctrine; see *Loisel* v. *Rowe*, 233 Conn. 370, 382–83, 660 A.2d 323 (1995); that permits us to retain jurisdiction. Cf. *State* v. *Wassillie*, 606 P.2d 1279, 1280 (Alaska 1980) (applying same exception under similar circumstances); *Kraft* v. *State*, 156 So. 3d 1116, 1117 (Fla. App. 2015) (same); *Saunders* v. *Hornecker*, 344 P.3d 771, 775 (Wyo. 2015) (applying same exception to different constitutional challenge to bail order).

The purported denial of the constitutional right to bail pending sentencing for persons convicted of certain violent offenses satisfies each of the three conditions required to invoke this exception. See *Loisel* v. *Rowe*, supra, 233 Conn. 382 (prescribing three conditions). Given the specific class of offenders to which such a purported right could apply and the infringement of liberty should such a right be denied, it is self-evident that the second and third conditions have been met. See id. ("Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect . . . a reasonably identifiable group for whom [the defendant] can be said to act as surrogate. Third, the question must have some public importance."). The state does not contend otherwise.

Insofar as the state argues that the first condition of this exception has not been met—that "the challenged action, or the effect of the challenged action, by its very nature [is] of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded"; id.;—we disagree. By the state's own calculations, the current average period between conviction and sentencing is two to three months. Up to twenty days of this period may lapse between the trial court's order and the state's filing of an opposition to a petition for review; see Practice Book §§ 66-6 and 78a-1; leaving approximately forty to seventy days before sentencing typically would

render the petition moot. Cf. *Goodson* v. *State*, 228 Conn. 106, 116, 635 A.2d 285 (1993) ("collective bargaining agreements, generally having a two to three year lifespan, are likely to expire before a midterm dispute can be fully litigated").

The state contends, however, that if we conclude that review of postconviction orders is available under the statute and rule of practice previously discussed, then the expedited review available under those provisions will avoid mootness in most cases. See General Statutes § 54-63g ("[a]ny such petition shall have precedence over any other matter before said Appellate Court and any hearing shall be heard expeditiously"); Practice Book § 78a-1 (imposing similar requirements). Again, we disagree.

Although we have indicated that availability of expedited review can be "a significant factor" in assessing whether an issue is so time limited as to render most such cases raising that issue moot before they can be resolved; *In re Emma F.*, 315 Conn. 414, 427, 107 A.3d 947 (2015); we have not held that such a procedure would be per se dispositive. See id. (concluding that expedited review was significant factor when trial court's order contained no durational constraint and action mooting appeal arose solely because trial court took unusual action of vacating order being challenged). Expedited review undoubtedly would prevent typical bail decisions from being rendered moot. However, there is a strong likelihood that a petition raising the more complex and far-reaching constitutional issue that is presently before us would not be resolved to its ultimate conclusion before sentence is imposed in its ordinary course. Cf. *State* v. *McCahill*, supra, 261 Conn. 493, 497–98 (appeal of trial court's August 9, 2001 bail decision, transferred from Appellate Court to Supreme Court to be considered with victim's writ of error, decided on August 20, 2002); *State* v. *Ayala*, 222 Conn. 331, 332, 336–37, 610 A.2d 1162 (1992) (trial court's June 20, 1991 bail revocation decision denied by Appellate Court on September 5, 1991, and reversed by this court on June 9, 1992); *State* v. *Shelton*, 166 Conn. 677, 319 A.2d 110 (1974) (trial court's March 18, 1974 order dismissed on April 24, 1974); *State* v. *Dellacamera*, 110 Conn. App. 653, 656–57, 955 A.2d 613 (2008) (resolution of trial court's July 12, 2007 ruling on October 24, 2007). As one federal court noted, "[b]ecause of the short period between conviction and sentencing, most of the postconviction cases on bail have arisen under the statutory section dealing with detention on appeal . . . ."[6] *United States* v. *Strong*, 775 F.2d 504, 508 (3d Cir. 1985). Therefore, we have jurisdiction to consider the merits of the petition for review.

## II

The defendant contends that the constitutional right to bail under article first, § 8, of the Connecticut constitution extends beyond a determination of guilt to sentencing. He advances alternative arguments based on

the 1965 amendment to article first, which excised the phrase "before conviction" from the provision for the right to bail that had existed since 1818. See Conn. Const. (1818), art. 1, § 9. His principal argument, relying on the conventional meaning of conviction, is that the constitution of 1965 expanded the right to bail to include the postverdict, presentence period. His fallback position, relying on an alternative meaning of conviction, is that the right to bail has always encompassed this period. We are persuaded that the weight of authority does not support either argument.

Although this court has referred to the constitutional right to bail under article first, § 8, in a manner suggesting that it is a pretrial right; see, e.g., *State* v. *Ayala*, supra, 222 Conn. 343 (citing "constitutional right to bail pending trial"); id., 359–60 (*Berdon*, *J.*, dissenting) ("[t]he framers of our state constitution placed a high priority on the right to be free pending a determination of guilt"); we have never undertaken the necessary textual and historical examination to reach an informed conclusion.[7] See *State* v. *Barton*, 219 Conn. 529, 538–40, 594 A.2d 917(1991) (declining to rely on earlier decision that failed to engage in historical analysis); see also id., 538 n.4. Therefore, we now undertake such an examination, informed by settled factors that guide this process. See *State* v. *Geisler*, 222 Conn. 672, 685, 610 A.2d 1225 (1992) (deeming following factors relevant to construction of our state constitution: [1] text of operative constitutional provision; [2] holdings and dicta of this court and Appellate Court; [3] persuasive and relevant federal precedent; [4] persuasive sister state decisions; [5] history of operative constitutional provision, including historical constitutional setting and debates of framers; and [6] contemporary economic and sociological considerations, including relevant public policies).

Article first, § 8, of our state constitution prescribes various rights a defendant is to be afforded in criminal proceedings. As we previously indicated, it provides in relevant part as to the right at issue in the present case: "In all criminal prosecutions, the accused shall have a right . . . to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great . . . ." Conn. Const., art. 1, § 8. The provision in its current form was adopted in 1965.

Nothing in the text of this provision necessarily limits the right to bail to exclude the period between a verdict or plea of guilt and sentencing. The term "criminal prosecutions" can include the sentencing phase of the proceedings. See Black's Law Dictionary, supra (defining criminal prosecution as "[a]n action or proceeding instituted in a proper court on behalf of the public, for the purpose of securing the conviction and punishment of one accused of crime"); see also Conn. Const., art. 1, § 8, as amended by articles seventeen and nineteen of the amendments (providing rights to victims "[i]n all criminal prosecutions," including right to make state-

ment at sentencing); *Betterman* v. *Montana*, U.S. , 136 S. Ct. 1609, 1617, 194 L. Ed. 2d 723 (2016) (noting that "[t]he course of a criminal prosecution is composed of discrete segments," and referring to one such segment as that between conviction and sentencing). The term "accused," as we explained in part I of this opinion, is not always limited to persons charged with, but not yet found guilty of, a criminal offense. See id., 1614, 1615 n.4 (applying meaning of term as understood by founders as person charged with crime, in light of other factors supporting that meaning in context of speedy "trial" right, but recognizing that term may have different meaning in context of other rights afforded under sixth amendment). A broader meaning of the term must apply in connection with some of the rights prescribed in article first, § 8, as they have been recognized to extend to sentencing. See, e.g., *State* v. *Colon*, 272 Conn. 106, 322–24, 864 A.2d 666 (2004) (examining "right to be heard" in sentencing phase as right to counsel), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005); *State* v. *Wall*, 40 Conn. App. 643, 659, 673 A.2d 530 (examining right to speedy trial in sentencing), cert. denied, 237 Conn. 924, 677 A.2d 950 (1996).[8] Nonetheless, it is clear that not all of the rights provided under article first, § 8, extend that far, as others are clearly pretrial rights, i.e., the right to be informed of the nature and cause of the accusation.

As this court previously has noted, "[t]o comprehend the true import of the right to bail under our constitution, it is helpful to consider the historical record of the period before and at the time of the adoption of the provision. See *State* v. *Barton*, 219 Conn. 529, 538–39 n.4, 541 n.8, 594 A.2d 917 (1991); *State* v. *Lamme*, 216 Conn. 172, 178–81, 579 A.2d 484 (1990)." *State* v. *Ayala*, supra, 222 Conn. 349.

To fairly address the question of the temporal scope of the constitutional right to bail, we trace this right back to its preconstitutional origin. From 1672 until the adoption of our first written constitution in 1818, there existed a statutory right to release, secured by bail or otherwise, until the defendant was sentenced. See id., 350 (citing 1672 legislative enactment, and substantially similar subsequent enactments, "declaring that 'no mans person shall be Restrained or Imprisoned by any Authority whatsoever, *before the Law hath sentenced him thereunto* if he can put in sufficient security, bayl or mainprize for his appearance and good behaviour in the mean time, unless it be in Crimes Capital, and Contempt in open Court, or in such cases where some express Law doth allow it' " [emphasis altered]). A nearly identical provision was incorporated in the 1750 and 1808 revisions of Connecticut's declaration of rights. See Public Statute Laws of the State of Connecticut (1808), tit. I, § 4, ann. (7), p. 24.

The provision of such rights must be treated as significant given this court's previous acknowledgement "that '[t]he constitution adopted in 1818 did not create a

government but gave to that which had already been established the sanction of the people and, in very general language, formulated its framework.' *Dowe* v. *Egan*, 133 Conn. 112, 119, 48 A.2d 735 (1946); see also C. Collier, ["The Connecticut Declaration of Rights Before the Constitution of 1818: A Victim of Revolutionary Redefinition," 15 Conn. L. Rev. 87, 96 (1982)] ('the substance of the ancient statutory and common law protections continued unchanged' following the adoption of the Bill of Rights in 1818)." *State* v. *Ayala*, supra, 222 Conn. 351.

In light of this presumption, it is important to point out that, despite such laws, the court initially appeared to equate the right to bail with the period preceding a determination of guilt. See *Dickinson* v. *Kingsbury*, 2 Day (Conn.) 1, 6 (1805) ("The personal liberty of the subject is to be favored, as far as is practicable and safe, until conviction. Bail for his appearance at the court, in which his guilt or innocence is to be tried, is, at once, the mode of favoring that liberty, and securing the appearance for trial."); see also *State* v. *Beach*, 2 Kirby (Conn.) 20, 21 (Super. 1786) ("[t]here had been some doubts with the [c]ourt formerly whether the [c]ourt had right to bail after conviction and before judgement—but it was now settled—and the [c]ourt admitted bail to be taken"). This equivalency finds some support in a statute that existed concurrently with the bail provision in the 1808 revision of the declaration of rights, which indicated that bail was a pretrial right. See Public Statute Laws of the State of Connecticut (1808), tit. XVI, ch. II, § 1, p. 69 ("all prisoners detained in jail for trial, for an offense not capital, shall be entitled to bail").

There also may be a practical explanation for such an equivalency. There is some evidence suggesting that it was common during this period for there to be no or little delay between the verdict or the plea and sentencing.[9] See 2 Z. Swift, A System of the Laws of the State of Connecticut (1796) p. 403 ("[i]f the verdict is 'guilty,' he is then said to be convicted of the crime wherof he stands indicted or informed against, and the court are to pronounce the judgment of the law"); see also 1 J. Chitty, A Practical Treatise on the Criminal Law (1819) p. 570 ("[t]he sentence . . . is usually given immediately after the conviction, but the court may adjourn to another day and then give judgment" [footnote omitted]). It must be remembered that, during the preconstitutional period, no presentence investigation was conducted; see footnote 9 of this opinion; specific penalties were prescribed for many offenses under our earliest penal laws; see generally L. Gibbon, "The Criminal Codes of Connecticut," 6 J. Crim. L. & Criminology 177 (May, 1915 to March, 1916); see also N. Gertner, "A Short History of American Sentencing: Too Little Law, Too Much Law, or Just Right," 100 J. Crim. L. & Criminology 691, 694 (2010); and bail was also ordered in civil cases, as private prosecutions were not uncommon. See Public Statute Laws of the State of Connecti-

cut (1808) tit. XVI, ch. I ("An Act concerning Bail, in civil and criminal Cases").

The 1818 constitution must be viewed in light of this ambiguous history as to the significance of the period between the verdict (or the plea) and sentencing. The 1818 constitutional provision for the right to bail no longer referred expressly to sentencing. Instead, it provides in relevant part: "All prisoners shall, *before conviction*, be bailable, by sufficient sureties, except for capital offences, where the proof is evident, or the presumption great . . . ." (Emphasis added.) Conn. Const. (1818), art. I, § 14.

Authorities of the period preceding and following the adoption of the 1818 constitution recognized that the predominant meaning of "conviction" is the finding of the defendant's guilt (whether by verdict or plea), with the term's secondary meaning including the pronouncement of sentence. See *Quintard* v. *Knoedler*, 53 Conn. 485, 487, 2 A. 752 (1885) (citing definitions of conviction from various treatises and law dictionaries, as well as case law from neighboring Commonwealth of Massachusetts). Thus, this court has recognized that "[i]n a large majority of instances where it is used, [conviction] manifestly refers to a finding of the party guilty by verdict or plea of guilty, and not to a sentence in addition." Id., 488. In reliance on this longstanding presumptive meaning, in the period following 1818, other courts routinely concluded that the primary meaning of conviction applied, unless there was clear evidence of intent to apply the secondary meaning. See, e.g., *Ex parte Brown*, 68 Cal. 176, 178–82, 8 P. 829 (1885); *State* v. *Barnes*, 24 Fla. 153, 157–62, 4 So. 560 (1888); *Hamilton* v. *Auditor*, 53 Ky. (14 B. Mon.) 230, 185–86 (1853); *Blair* v. *Commonwealth*, 66 Va. (25 Gratt) 850, 852–59 (1874).

The historical record lacks persuasive evidence of an intention to apply the secondary meaning, despite the provision for bail until sentencing in the declaration of rights. Penal statutes in effect before and after the adoption of the 1818 constitution commonly distinguished between conviction and punishment. See Public Statute Laws of the State of Connecticut (1808) tit. LXVI, ch. 3, pp. 297–300; General Statutes (1821 Rev.) tit. 22. Early case law similarly made such a distinction. See *State* v. *Beach*, supra, 2 Kirby (Conn.) 21. Indeed, in an 1899 case, this court necessarily presumed that the primary meaning applied when stating that "[t]he power to admit to bail after conviction is not a statutory but a common-law, power; the constitutional provision does not apply . . . ." *State* v. *Vaughan*, 71 Conn. 457, 460, 42 A. 640 (1899). Thereafter, the court distinguished "conviction" from "sentence" and "judgment." See id. (The common-law power to grant bail "continues after conviction and after judgment, so long as the prisoner is in the custody of the court, but in most cases ceases when he is taken in execution . . . . [W]hen the courts exercise the common-law power, they may admit to bail, after conviction and after sentence, and until the

accused is in execution." [Citations omitted.]). Indeed, a more recent Mississippi case similarly interpreted its constitutional provision providing bail "before conviction" to mean before the adjudication of guilt and not to continue thereafter pending sentencing.[10] See *Frontier Ins. Co.* v. *State*, 741 So. 2d 1021, 1026 (Miss. App. 1999) (constitutional guarantee of bail " 'before conviction' " evidences that conviction "itself marks the demarcation line regarding bail and not conviction and sentencing").

It also is significant that the constitutional right to bail has been deemed a correlative of the right to a presumption of innocence.[11] See *State* v. *Menillo*, 159 Conn. 264, 269, 268 A.2d 667 (1970) ("[postconviction] bail is entirely disassociated from the preconviction presumption of innocence . . . and should be granted with great caution"); see also *Ex parte Voll*, 41 Cal. 29, 32 (1871) ("We are of [the] opinion that the [c]onstitution, in declaring bail to be a matter of right, contemplated only those cases in which the guilt of the party had not been already judicially ascertained; cases in which the prisoner as yet stood upon his plea of not guilty, supported with all the presumptions of innocence with which the law delights to surround him. But when his trial has been had, and his plea proven false, the law will not stultify itself by presuming him other than that it has itself adjudged him to be."); *State* v. *Flowers*, 330 A.2d 146, 148 (Del. 1974) ("Once a defendant has been adjudicated guilty by judge or jury, the reasons for granting bail—unhampered preparation of defense and postponement of punishment until conviction . . . vanish. They are swept away by the conviction as surely as is the presumption of innocence." [Citation omitted.]); cf. *Stack* v. *Boyle*, 342 U.S. 1, 4, 72 S. Ct. 1, 96 L. Ed. 3 (1951) ("This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. . . . Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." [Citation omitted.]); *United States* v. *Madoff*, 316 Fed. Appx. 58, 59 (2d Cir. 2009) ("Post-conviction, a defendant no longer has a substantive constitutional [due process] right to bail pending sentencing. . . . As the district court observed, the defendant is no longer entitled to the presumption of innocence." [Citations omitted; internal quotation marks omitted.]); *United States* v. *Abuhamra*, 389 F.3d 309, 318–19 (2d Cir. 2004) ("[O]nce a jury found [the defendant] guilty beyond a reasonable doubt of multiple felonies, his reasonable expectation of continued freedom from government detention was significantly reduced from that of the average law-abiding citizen, or that of a pre-trial defendant. In the pre-trial context, a defendant's liberty interest can implicate substantive as well as procedural rights, specifically, the proscription against punitive detention before trial. . . . But once a defendant is afforded the considerable process and constitutional protections of a jury trial and

found guilty beyond a reasonable doubt, the substantive interest in avoiding punitive detention essentially disappears, and any continued expectation of liberty pending formal sentencing depends largely on statute." [Citation omitted; footnote omitted.]). As these cases reflect, once a defendant is properly found guilty of a crime, whether by verdict or plea, that presumption vanishes. At the same time, the incentive to flee appreciably increases.

Therefore, we conclude that in the period preceding 1965, at which time the constitutional provision for bail was amended, there was no constitutional right to bail between conviction (whether by verdict or plea) and sentence.

The question remains whether the 1965 amendment expanded the temporal scope of this right. For the reasons that follow, we conclude that it did not.

At the 1965 constitutional convention, a resolution was proposed to amend article first of the Connecticut constitution of 1818 by, among other things, eliminating the separate provision for the right to bail in article first, § 14, and to incorporate that right into the section with the other rights then provided in article first, § 9 (what is now article first, § 8). See Conn. Constitutional Convention Resolution No. 168 (July 28, 1965). The record is scant regarding these changes. See W. Horton, The Connecticut State Constitution: A Reference Guide (1993) p. 52. The limited record, however, does reflect that a proposed draft of what is now article first, § 8, provided in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to be released on bail, before conviction, upon sufficient security, except in capital offenses, where bail may be provided at the discretion of the court . . . ." Conn. Constitutional Convention Resolution No. 168, supra, § 10, pp. 2–3. The task of revising what is now article first, § 8, was referred to a committee comprised of three judges, including former Supreme Court Chief Justice Raymond E. Baldwin. See Conn. Constitutional Convention, Constitutional Committee Hearings, Resolutions and Rules (September 27, 1965) pp. 3, 6. Chief Justice Baldwin later moved to adopt a substitute resolution that eliminated the phrase "before conviction," and returned to the original language relating to bail for capital offenses, which motion the committee unanimously passed. See id., p. 9 (September 30, 1965). With one exception expressly noted, the changes to what is now article first, § 8, were described for the record as nonsubstantive. See Journal of the Constitutional Convention of Connecticut (1965) p. 206 ("In the revised [a]rticle [f]irst, an accused in a criminal prosecution is given the right 'to be informed of' the charge against him [rather than having to 'demand' to know the charge]; otherwise he retains essentially the same rights as heretofore. Language is modernized and improved in a few instances but without substantive changes.").

This history supports the conclusion that the consti-

tutional right to bail was not expanded in 1965. Expanding the right to release following conviction undoubtedly would have been properly characterized as substantive. We can presume that the importance of the proper characterization of the nature of the amendment would not have escaped the attention of experienced jurists.

In the absence of any explanation, we cannot be certain why the "before conviction" language was not carried forward, as its inclusion would make clearer the temporal scope of the right. However, we note that no other right in the prior § 9, now § 8, of article first, had any similar temporal limitation. We presume that the drafters determined that the presumptive meaning of "accused," in light of the association between the right to bail and the presumption of innocence, would establish the requisite limitation. Cf. *Betterman* v. *Montana*, supra, 136 S. Ct. 1614–15 (relying on these factors). We observe that courts in other jurisdictions with constitutional provisions imposing no textual limitation on the right to bail (except capital offenses) have concluded that their constitutions do not afford a right to bail after the defendant is deemed to be convicted of a crime.[12] See *State* v. *Wassillie*, supra, 606 P.2d 1282–83; *Ex parte Brown*, supra, 68 Cal. 177; *Ex parte Voll*, supra, 41 Cal. 32; *Romeo* v. *Downer*, 69 Colo. 281, 282, 193 P. 559 (1920); *State* v. *Flowers*, supra, 330 A.2d 148–49; *Commonwealth* v. *Fowler*, 451 Pa. 505, 509–10, 304 A.2d 124 (1973); *Izadi* v. *State*, Docket No. 63672, 2014 WL 2625539, *1 (Nev. June 11, 2014); *Priest* v. *Pearce*, 314 Or. 411, 420–23, 840 P.2d 65 (1992) (Fadeley, J., concurring). Although we are aware of two jurisdictions that had reached a contrary conclusion; see *Ex parte McDaniel*, 86 Fla. 145, 149, 150, 97 So. 317 (1923) (right to bail continues until conviction, which means adjudication of guilt and not simply verdict by jury); *New Orleans* v. *Lacoste*, 169 La. 717, 718, 125 So. 865 (1930) ("[u]nder section 12, art. 1, of the Constitution of 1921, all persons charged with crime are entitled to bail with sufficient sureties, whether before or after conviction and sentence, except in the two instances designated in the constitutional provision referred to"); both states' constitutions were subsequently amended either to make clear that this right does not continue until sentencing or otherwise limit the scope of this right. See *Kraft* v. *State*, supra, 156 So. 3d 1117–18 ("there is no constitutional 'right to bail after a verdict of guilty has been rendered'" but "a trial court has discretion to consider releasing a defendant on bail following conviction and pending sentencing"); La. Const., art. I, § 18 (providing right to bail in period "[a]fter conviction and before sentencing" only if maximum potential sentence is five years or less).

Despite the weight of authority to the contrary, the defendant relies on the fact that a conviction may be set aside before sentencing. See *State* v. *Vaughan*, supra, 71 Conn. 458 ("[a]fter a verdict of 'guilty' accepted by the court, the judgment may still be in favor of the

accused, or, if against him, the sentence may be such that the judgment for that reason is erroneous"). The defendant's point only takes him so far. Should the trial court grant such relief, a defendant would no longer stand "convicted," would be entitled to a presumption of innocence anew, and would be constitutionally entitled to bail. Conversely, should the trial court deny the motion for a new trial or to set aside the verdict before sentencing, a defendant would be identically situated to the defendant when he filed his petition in the present case.

The defendant also points to various statutes related to bail procedures that he contends are consistent with his interpretation of article first, § 8, as affording the right to bail through sentencing.[13] However, even if we accept the defendant's view of these provisions, they would reflect a legislative understanding of the scope of the constitutional right that is in tension with a different legislative understanding of that right reflected in the statute at issue in the present case, § 53-64f. This court has recognized that there are circumstances under which "[a] practical construction placed upon a constitutional provision immediately after its adoption and consistently and repeatedly followed . . . for over a century thereafter is most persuasive." *Snyder* v. *Newtown*, 147 Conn. 374, 386, 161 A.2d 770 (1960), appeal dismissed, 365 U.S. 299, 81 S. Ct. 692, 5 L. Ed. 2d 688 (1961); *Cahill* v. *Leopold*, 141 Conn. 1, 14, 103 A.2d 818 (1954) (same); see also *Board of Water Commissioners* v. *Curtis*, 87 Conn. 506, 510–11, 89 A. 189 (1913) ("[I]f there was a practical construction of the provision given by the General Assemblies of the years immediately following 1818, in the forms which their legislation assumed, such contemporaneous construction would also furnish substantial aid to interpretation. This would be peculiarly so in the present instance, since during those years a considerable number of the members of the constitutional convention were members of the General Assembly, and among them were not a few who have held high place in public position and esteem as lawyers and judges."). Those conditions are not met with respect to the statutes cited by the defendant, especially insofar as he places significant weight on an amendment to one of those statutes adopted twenty-seven years after the 1965 constitution was ratified.

The petition for review is granted but the relief requested is denied.

[1] General Statutes § 54-63f authorizes the release of an individual pending sentence or appeal, but excludes persons who have been convicted of murder in violation of General Statutes §§ 53a-54a, 53a-54b, 53a-54c or 53a-54d. Following the verdict in the defendant's case, the state did not argue that the statute barred his release but instead asked the court to increase the bond by $4 million pending sentencing. The court increased the defendant's bond only by $500,000, but imposed conditions on release.

[2] The petition for review was filed in the Appellate Court pursuant to General Statutes § 54-63g and Practice Book § 78a-1, and was thereafter transferred to this court pursuant to Practice Book § 65-3.

[3] We cite to dictionaries from the 1960s because, as we later explain, § 54-63g was enacted during that period. Nonetheless, both meanings recited continue to the present day.

[4] The act amended a provision applicable to any person "charged with

the commission of a criminal offense," a term similar to "accused," making it an offense for any such person released pending appearance in court to wilfully fail to appear when legally called according to his promise to appear. See Public Acts 1967, No. 549. There is no doubt that this penalty was intended to apply to released persons failing to appear postconviction, pending sentencing. Cf. *State* v. *Garvin*, 242 Conn. 296, 298 n.1, 300–301, 699 A.2d 921 (1997) (addressing convictions for failure to appear pending sentencing under General Statutes § 53a-172, which similarly applies to persons released "while charged with the commission of" felony).

[5] In *McCahill*, this court concluded that § 54-63f violated separation of powers insofar as it prevented the trial court's exercise of its inherent common-law discretionary authority to grant postconviction release with regard to certain nonhomicide offenses, but opined in dicta: "[W]e discern no interference with the Superior Court's role when the legislature enacted [No. 98-51 of the 1998 Public Acts], to prevent release for those who have been convicted of some of the most serious crimes, because the term of incarceration normally levied for such crimes would likely exceed the period of time that it would take for resolution of the defendant's appeal." *State* v. *McCahill*, supra, 261 Conn. 519. In the present petition, the defendant does not argue that the statute violates separation of powers by interfering with the trial court's common-law discretion to release him on bail pending sentencing.

[6] The federal constitution contains no counterpart to the right to bail under article first, § 8, of the Connecticut constitution and that matter has been controlled by statute since enactment of the Judiciary Act of 1789, 1 Stat. 73, 91. See *Stack* v. *Boyle*, 342 U.S. 1, 4, 72 S. Ct. 1, 96 L. Ed. 3 (1951). Nonetheless, the federal courts also consider bail rights through the lens of substantive due process. See, e.g., *United States* v. *Madoff*, 316 Fed. Appx. 58, 59 (2d Cir. 2009); *United States* v. *Abuhamra*, 389 F.3d 309, 318–19 (2d Cir. 2004).

[7] The parties argue about the persuasiveness of dicta in *State* v. *Menillo*, 159 Conn. 264, 268 A.2d 667 (1970). The state relies on the following language: "It must not be overlooked that we are concerned here only with preconviction bail. We are not at all concerned with postconviction bail and a stay of execution of sentence during the pendency of an appeal. Such bail is entirely disassociated from the preconviction presumption of innocence, is not authorized by any constitutional requirement but only under [General Statutes (Rev. to 1968)] § 54-63f . . . ." Id., 269. The defendant points to the following additional statement: "The fundamental purpose of bail is to ensure the presence of an accused throughout all proceedings, including final judgment." Id.; see *State* v. *Ayala*, supra, 222 Conn. 339 ("[i]n a criminal proceeding, there is no final judgment until the imposition of a sentence"). We observe that these statements were made in connection with the question of bail pending appeal, after sentence has been rendered, and in the absence of constitutional analysis. Therefore, we do not view them as particularly persuasive as to the matter presently before us.

[8] We observe that *State* v. *Wall*, supra, 40 Conn. App. 643, appears to be in tension with *Betterman* v. *Montana*, supra, 136 S. Ct. 1609. Nonetheless, any such concern does not compel an interpretation of "accused" in article first, § 8, as limited to persons charged but not found guilty.

[9] Until the late eighteenth century, new trials were granted exclusively by the General Assembly. See *Magill* v. *Lyman*, 6 Conn. 59, 63 (1825); 1 Z. Swift, A Digest of the Laws of the State of Connecticut (1822) p. 786. Even thereafter, the settled practice until the early 1800s was to require a motion for a new trial to be made to the court within forty-eight hours after the verdict, and a motion to set aside the verdict to be made within twenty-four hours after the verdict. See *Stone* v. *Stevens*, 12 Conn. 218, 231–32 (1837); see also *State* v. *Macri*, 7 Conn. Supp. 112, 113 (1939). Because motions for a new trial on the ground that the verdict was against the evidence were decided by this court, "[t]he motion for a new trial might be allowed either before or after judgment. By our early practice it did not suspend judgment, but judgment was first rendered and then the motion allowed. Execution only was stayed." *State* v. *Vaughan*, 71 Conn. 457, 459, 42 A. 640 (1899).

Presentence investigation reports, the primary cause of delay between a determination of guilt and sentencing, were not mandated until 1955. See General Statutes (Cum. Supp. 1955) § 3337d.

[10] We observe that two other provisions in our constitution refer to "conviction." Article fourth, § 13, of the Connecticut constitution gives the governor the "power to grant reprieves after conviction, in all cases except those of impeachment, until the end of the next session of the general assembly, and no longer." Article ninth, § 4, of the Connecticut constitution provides in relevant part that "[no] conviction of treason, or attainder, shall work

corruption of blood, or forfeiture." We hesitate to construe these provisions when neither is implicated in the present case, and the parties' briefs do not acknowledge these provisions, let alone examine their meaning in light of the historical record to determine whether the primary or second meaning of conviction applies. We admit the possibility that conviction has a different meaning in each of these provisions, as the former operates to stay execution of a sentence; see *Palka* v. *Walker*, 124 Conn. 121, 125, 198 A. 265 (1938); whereas the latter could apply to punishments imposed by the court in the penalty phase of a criminal prosecution as well as punishments that arise by operation of law as a consequence of a conviction.

[11] We acknowledge that defendants charged with capital offenses are similarly entitled to a presumption of innocence; see *Herrera* v. *Collins*, 506 U.S. 390, 399, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993); and yet pretrial release on bail is constitutionally barred for such offenders when there is proof of guilt well below the beyond a reasonable doubt burden necessary to overcome that presumption. See *State* v. *Menillo*, 159 Conn. 264, 270, 268 A.2d 667 (1970) (approving of constitutional standard for decision not to grant bail in capital case prior to conviction "when the circumstances disclosed indicate a fair likelihood that the defendant is in danger of a jury verdict [of guilt of the capital offense]"). The fact that the right to bail is not wholly correlative of this presumption does not negate the strong correlation between these rights generally.

[12] Several of the cases cited by the state for this proposition do not necessarily support it, and these cases demonstrate the ambiguity in the term "postconviction" or "after conviction." The court in each of these cases held that its state constitution does not afford a right to bail after conviction, but cited that proposition in connection with the question of bail postsentencing, pending appeal. See *Jones* v. *Grimes*, 219 Ga. 585, 586, 134 S.E.2d 790 (1964); *Braden* v. *Lady*, 276 S.W.2d 664, 666 (Ky. 1955); *State* v. *Tucker*, 57 N.D. 508, 222 N.W. 651 (1928); *Kordelski* v. *Cook*, 621 P.2d 1176, 1179 (Okla. 1980); *State* v. *Smith*, 84 Wn. 2d 498, 499, 527 P.2d 674 (1974) (en banc). In light of the dual meanings for the term conviction and the context of the issue raised, we cannot presume, as the state suggests, that the courts in these cases necessarily used that term to mean the determination of guilt and not the judgment of conviction.

[13] In apparent order of importance, the defendant cites to General Statutes § 54-66a ("[a]ny bail bond posted in any criminal proceeding in this state shall be automatically terminated and released whenever the defendant . . . is sentenced by the court and a stay of such sentence, if any, is lifted"), General Statutes § 54-53 ("[e]ach person detained in a community correctional center pursuant to the issuance of a bench warrant of arrest or for arraignment, sentencing or trial for an offense not punishable by death shall be entitled to bail and shall be released from such institution upon entering into a recognizance, with sufficient surety, or upon posting cash bail as provided in section 54-66, for the detained person's appearance before the court having cognizance of the offense, to be taken by any person designated by the Commissioner of Correction at the institution where the person is detained"), and General Statutes § 54-53a (a) ("[n]o person who has not made bail may be detained in a community correctional center pursuant to the issuance of a bench warrant of arrest or for arraignment, sentencing or trial for an offense not punishable by death, for longer than forty-five days, unless at the expiration of the forty-five days he is presented to the court having cognizance of the offense"). With respect to § 54-66a, the defendant emphasizes the significance of a 1992 public act; Public Acts 1992, No. 92-139; that amended that statute to substitute the word "sentenced" for "convicted" and statements of support for that amendment from a representative of the Judicial Branch insofar as the prior revision of that statute amended the previous year "could be interpreted as providing that no bond would be in effect from the time of such finding of guilt, until the imposition of sentence." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1992 Sess., p. 251.