*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

Electronically Filed
Supreme Court
SCWC-20-0000650
17-JAN-2023
09:59 AM
Dkt. 15 OP

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

STANLEY CANOSA,
Petitioner/Defendant-Appellant.

_____

SCWC-20-0000650

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-20-0000650, CAAP-20-0000438, CAAP-20-0000506;
CR. NO. 1PC091001524)

JANUARY 17, 2023

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY WILSON, J.

This case raises the issue of whether a sixteen-month delay in sentencing deprived the defendant of due process, where the delay in sentencing precluded the defendant from being sentenced prior to the expiration of the ordinary maximum term.

We also consider whether the delay in sentencing rendered the defendant's allocution constitutionally inadequate.

For the reasons discussed below, we hold that in this specific instance, the State caused an unreasonable delay in sentencing which deprived the defendant of due process and a sentencing proceeding that was fundamentally fair, in violation of article 1, section 5, of the Constitution of the State of Hawai'i and the Fourteenth Amendment to the United States Constitution.

We also hold that the State's unreasonable delay in sentencing deprived the defendant of the opportunity for allocution, in violation of the due process clause under article 1, section 5, of the Constitution of the State of Hawai'i. As such, we need not reach the defendant's additional points of error.

Therefore, the Intermediate Court of Appeals' ("ICA") judgment on appeal is vacated. The defendant is to be released forthwith, and this case is remanded to the circuit court to impose a sentence of time served, *nunc pro tunc* from the date of release.

2

## I. BACKGROUND

**A. Circuit Court Proceedings**

**1. Canosa I: The First Trial and First Appeal**

On September 29, 2009, the State of Hawai'i charged Petitioner/Defendant-Appellant Stanley Canosa ("Canosa") with burglary in the first degree, in violation of Hawai'i Revised Statutes ("HRS") § 708-810(1)(c) (2014)(Count 1); sexual assault in the first degree, in violation of HRS § 707-730(1)(a) (Supp. 2013) (Count 2); unauthorized entry in a dwelling, in violation of HRS § 708-812.6 (Supp 2010) (Count 3); and two counts of sexual assault in the third degree, in violation of HRS § 707-732(1)(f) (Supp. 2013) ("Counts 4 and 5"). On May 27, 2011, a jury in the Circuit Court of the First Circuit ("circuit court") found Canosa guilty of Count 1, Count 2, and Count 3, and acquitted Canosa of Counts 4 and 5.[1] On November 29, 2011, the circuit court sentenced Canosa to extended terms of twenty years imprisonment for Count 1, life with the possibility of parole for Count 2, and ten years imprisonment for Count 3. The circuit court imposed all terms to run concurrently with credit for time served.

Canosa appealed to the ICA. State v. Canosa, No. CAAP-11-0001051, 2014 WL 503045 (Haw. App. Feb. 7, 2014) (mem.)

---

[1] The Honorable Randal K.O. Lee presided.

("Canosa I"). Canosa argued on appeal that the Deputy Prosecuting Attorney committed prosecutorial misconduct that deprived Canosa of a fair trial. Id. at *4. The ICA held that the State committed prosecutorial misconduct during closing arguments, vacated the judgment, and remanded the case for a new trial.[2] Id. at *5-6.

### 2. Canosa II: The Second Trial and Second Appeal

Canosa's second trial began on April 8, 2015.[3] The circuit court declared a mistrial on April 14, 2015 following Canosa's request for a new attorney. Trial commenced again on March 30, 2016.[4] The circuit court dismissed the sexual assault charge (Count 2) after the jury deadlocked on that charge. The jury found Canosa guilty on Count 1 (burglary in the first degree) and Count 3 (unauthorized entry in a dwelling).

During the sentencing phase of the trial, the jury made findings as to both Count 1 and Count 3 that the State had proven beyond a reasonable doubt that: Canosa was a persistent offender (in that he had previously been convicted of two or more felonies committed at different times when he was 18 years

---

[2]    The ICA concluded that since a new trial was warranted in light of the prosecutorial misconduct during closing arguments, it did not need to reach Canosa's assertion of other alleged incidents of prosecutorial misconduct. Id. at *6.

[3]    The Honorable Dean E. Ochiai presided.

[4]    The Honorable Karen S.S. Ahn presided.

4

of age or older); Canosa was a multiple offender (in that he was being sentenced for two or more felonies); and extended sentencing was necessary to protect the public.

The circuit court entered its judgment on June 27, 2016, and sentenced Canosa to extended terms of twenty years imprisonment for Count 1, and ten years imprisonment for Count 3. The circuit court imposed those terms to run consecutively.

Canosa appealed to the Intermediate Court of Appeals. State v. Canosa, No. CAAP-16-0000497, 2018 WL 1889511 (Haw. App. Apr. 20, 2018) (SDO) ("Canosa II"). On appeal, Canosa argued, that the circuit court abused its discretion by imposing a new sentence that was more severe following retrial in violation of HRS § 706-609. Id. at *2. The ICA agreed, and found that "due to the imposition of consecutive terms in Canosa's second sentence, the maximum possible imprisonment was increased from twenty to thirty years. Therefore, Canosa's second sentence was more severe and violated HRS § 706-609[.]" Id. at *3.

The ICA vacated the June 27, 2016 judgment and sentence and remanded for resentencing on April 20, 2018. Id. at *4. The ICA issued its judgment on appeal on November 15, 2018 ordering the same. Canosa filed an application for writ of certiorari, which this court rejected on January 18, 2019.

5

On remand for resentencing, the circuit court held a sentencing hearing on June 4, 2020.[5]  On the morning of June 4, 2020, Canosa filed a written objection to resentencing, and during the hearing made oral objections on the basis that he did not agree with the argument his counsel was making.

Canosa argued that he was prejudiced by the delay in resentencing, both with respect to parole considerations, and with respect to being deprived of a "fair opportunity to present mitigation and/or allocution of [his] sentence."  Canosa also argued that extended terms could not be imposed because the ordinary maximum ten-year and five-year sentences had already expired on September 22, 2019 for Count 1, and September 22, 2014 for count 3.  In support of this argument, Canosa asserted that "[t]he time still run.  And before you was [sic] able to sentence me, that time expired, the ordinary terms.  And one extended term is in essence extending the ordinary sentences beyond the statutory terms.  And once that expired, I mean, what is there to extend?"

Further, Canosa argued that when the ICA vacated the June 27, 2016 judgment and sentence, the ICA vacated the entire sentence, and not just to the extent it imposed consecutive terms.

---

[5]     The Honorable Karen T. Nakasone presided.

6

The circuit court overruled Canosa's objections as follows:

THE COURT:  Okay.  So the Court's ruling on the objections.  There was an objection.  One of the objections defendant raised is the delay.  And there was a delay from the time that the Supreme Court rejected certiorari from January 2019 to the time the sentencing -- we began to try to schedule -- try to reschedule this resentencing.  So you know, Mr. Canosa, I can tell you that it's unfortunate that the delay occurred.  But the fact that there was a delay in having this resentencing -- and this is my ruling -- does not mean that in any way that the Court cannot legally resentence you or that the State -- there's any kind of waiver by the State.  And the Court's ruling is that the fact that there was a delay in coming to this resentencing does not mean that there is an infirmity with the Court proceeding with sentencing today.

THE DEFENDANT:  What do you mean one infirmity?

THE COURT:  I'm ruling, sir. Okay?

The Court retains jurisdiction, the power, the authority, and the duty to resentence defendant in accordance with the directive of the appellate court.  So that is the ruling on the delay objection.

There was objections made on consecutive sentencing.  The State is not asking for consecutive terms. I'm not going to impose consecutive terms, so I'm not going to address those objections. They are moot.

THE DEFENDANT:  Your Honor -- (inaudible).  Excuse me one minute.  I understand what you're saying, but he not arguing, you know, for me. That's why I gotta speak on my behalf.

THE COURT:  Sir, I've read your objections.  I let you talk today briefly.  I understand what you're saying.  I'm going to rule.  Okay?

THE DEFENDANT:  How can I have one fair opportunity to argue myself?  He not arguing for me.

THE COURT:  I will let you speak at resentencing.  Okay? I'm going to address the objections regarding imposition of extended terms.

Defendant argued today and in his written pleading that the extended terms cannot be imposed because the ordinary maximum term already expired.  And he argues that it's logically impossible to extend a sentence that is already expired and does not exist.

7

> This Court interprets the remand as having vacated the prior sentences and the ICA remanded it back here for resentencing consistent with the appellate court order. Defendant's status is post conviction pending resentencing, and the Court retains jurisdiction to resentence.
>
> So the ICA's order vacated the June 27, 26 sentence with an order to resentence. So this Court -- my conclusion is that the 2016 sentence is vacated. Defendant's pending sentencing. He is being held on existing trial custody orders. He is receiving all jail credit he's entitled to on Counts 1 and 3.
>
> The vacated sentence does not mean that the ordinary sentence for Counts 1 and 2 was still running. And it doesn't mean that the ordinary sentence was running and expired and can no longer exist. So the Court rejects that argument that the Court can no longer sentence defendant to extended term because the ordinary sentence has run.
>
> This argument -- the Court's ruling is that this argument made by the defense is premised on the erroneous legal assumption that the ordinary sentences are still in effect and are running. And that's not the case.
>
> So for these reasons, the objections are rejected and overruled. I've made my ruling.

(emphasis added).

The circuit court then sentenced Canosa to ten years extended to twenty years for Count 1 and five years extended to ten years for Count 3. The circuit court ruled that the terms were to run concurrently, with credit for time served.

The circuit court entered its judgment resentencing Canosa on June 4, 2020, and Canosa filed a timely notice of appeal on July 6, 2020 initiating case number CAAP-20-0000438. On July 10, 2020, the circuit court entered an amended judgment ("2020 Amended Judgment"), correcting clerical errors. Canosa filed a timely notice of appeal to the 2020 Amended Judgment on August 12, 2020, thus initiating case number CAAP-20-0000506.

8

### 3. Canosa III: Motion to Correct Illegal Sentence and Third Appeal

On August 24, 2020, Canosa filed *pro se*[6] a motion to correct an illegal sentence pursuant to Hawai'i Rules of Penal Procedure ("HRPP") Rule 35(a). Canosa argued in his motion that having completed serving the ordinary terms of imprisonment statutorily prescribed by HRS § 706-660 (ten years for Count 1, five years for Count 3) which had expired on September 22, 2019 before the resentencing court could impose extended sentences, the extended sentences were in violation of Canosa's right to due process under article 1, section 5, of the Hawai'i State Constitution and the Fourteenth Amendment to the United States Constitution. Canosa concluded that the court was unauthorized to impose extended sentences once the ordinary terms of imprisonment prescribed by HRS § 706-660 had expired, and requested remedying the illegal sentence by declaring time served *nunc pro tunc* with respect to Counts 1 and 3.

The circuit court issued an order denying Canosa's HRPP Rule 35(a) motion on October 21, 2020 ("Order Denying Motion to Correct Illegal Sentence"). Canosa timely filed an

---

[6] Canosa noted that he filed *pro se* "because after directing my court-appointed counsel . . . to file a Rule 35(a) motion for correction of illegal sentence, [counsel] has not kept me informed of whether or not such motion was filed. Accordingly, I am proceeding pro se only to the extent of making sure that this motion is filed within the 90 day time period . . . . subsequently, I expect that [counsel] will assist in representing me at the hearing on this motion."

appeal of the circuit court's denial of his HRPP Rule 35(a) motion, initiating case number CAAP-20-0000650. The ICA consolidated Canosa's three appeals from his June 4, 2020 resentencing (CAAP-20-0000438, CAAP-20-0000506, and CAAP-20-0000650) under CAAP-20-0000650 ("Canosa III").

B.    **Intermediate Court of Appeals**

1.    **Canosa's Opening Brief**

On appeal, Canosa presented the following questions: (1) "Did the trial court abuse its discretion in re-sentencing [Canosa] to an extended sentence after his underlying maximum sentence had already expired?"[7] and (2) "Did the trial court abuse its discretion in denying [Canosa]'s Motion for [C]orrection of Illegal Sentence?"

As to the circuit court's abuse of discretion in re-sentencing Canosa to an extended sentence after his underlying maximum sentence had already expired, Canosa relied on State v. March, 94 Hawai'i 250, 255, 11 P.3d 1094, 1098 (2000) and State v. Kahalewai, 71 Haw. 624, 626, 801 P.2d 558, 560 (1990) in arguing that in this "case of first impression," the circuit court did not have the statutory authority to extend the ordinary terms of imprisonment prescribed by HRS § 706-660 because they had already expired, constituting an illegal

_____

[7]    Canosa defines "underlying maximum sentence" in a footnote as "the maximum penalty prescribed by law for the underlying charged offenses."

10

sentence not authorized by statute that violated his right to due process. Canosa further argued that "by operation of serving and satisfying the ordinary terms of imprisonment prescribed by HRS [§] 706-660 . . . before a legal sentence was ever imposed," it was "the court's duty in rendering a legal disposition of this case . . . to declare time served, *[n]unc pro tunc* . . . because no other sentence could be imposed in accordance with HRS [§] 706-660 and nor could any other sentence of imprisonment be authorized by statute."

Canosa next contested the circuit court's ruling that a delay does not impair the court's jurisdiction, authority and duty to resentence a defendant in accordance with the directive of the appellate courts. To this point, Canosa asserted that the court's jurisdiction and duty to resentence Canosa ended when the maximum sentences for each conviction were served on September 22, 2014 and September 22, 2019 respectively.

Canosa then argued that from the time the ICA issued its November 15, 2018 Judgment on Appeal ordering a remand for sentencing, the State had a duty to act diligently and prudently in completing resentencing by September 22, 2019 and failed to do so. According to Canosa, "the State gave up its right to pursue extended sentencing as [Canosa] had fully served the maximum term of imprisonment for the underlying charges prior to an extended sentence being sought to be imposed." Canosa

11

asserted that since there was no underlying sentence to extend after September 22, 2019, the June 4, 2020 sentence was "an egregious violation of Canosa's right not to be punished twice for the same offenses [sic] in accordance with the principles of double jeopardy."

As to the circuit court's abuse of discretion in denying Canosa's HRPP Rule 35(a) motion for correction of illegal sentence, Canosa again raised violation of due process and double jeopardy claims, and relied on Ex parte Lange, 85 U.S. 163 (1873), for the proposition that because Canosa served the underlying maximum penalty before being resentenced on June 4, 2020, a second judgment on the same verdict is void, and he therefore must be discharged.

Canosa concluded by requesting that the ICA vacate his sentence and order him immediately released after having fully served a ten-year term prior to being resentenced on June 4, 2020.

### 2. The State's Answering Brief

In answer, the State asserted that Canosa's points of error essentially alleged the same error—that the court abused its discretion in imposing an extended sentence after his

underlying maximum sentence as to both charges had expired.[8]

The State's rebuttal cited Hussey v. Say and relied on law of

the case doctrine in concluding "[t]hat the circuit court did

not abuse its discretion in imposing an extended term is law of

the case and cannot be re-litigated." Hussey v. Say, 139 Hawai'i

181, 185, 384 P.3d 1282, 1286 (2016). The State supported this

finding with the following language from Canosa II: "[g]iven

that the jury made the required factual findings under HRS §

706-662, it was within the Circuit Court's discretion to

sentence Canosa to extended terms of imprisonment." Canosa II,

2018 WL 1889511, at *3. On this basis, the State contended that

when the ICA vacated the circuit court's judgment in Canosa II,

it only did so "to the extent it imposes consecutive sentences

in violation of HRS § 706-609[,]" and that when it "remand[ed]

for resentencing consistent with this summary disposition

order[,]" the only portion of the judgment that was vacated was

the consecutive sentence, and therefore "the only task left for

the circuit court was to enter a judgment of conviction and

sentence without the consecutive sentence." The State concluded

that "[b]ecause the portion of the judgment relating to Canosa's

---

[8]     The State considers Canosa's opening brief argument that the "extended sentence was an abuse of discretion as the State did not prove that [he] was a danger to the public" to be waived pursuant to Hawai'i Rules of Appellate Procedure ("HRAP") Rule 28(b)(4) insofar as it was not a point of error raised.

underlying and extended sentences were not vacated[,]" Canosa's argument had no merit.  The State requested that the ICA affirm the 2020 Amended Judgment and Order Denying Motion to Correct Illegal Sentence.  Canosa did not file a reply brief.

### 3.    The ICA's Memorandum Opinion[9]

The ICA affirmed the 2020 Amended Judgment and the Order Denying Motion to Correct Illegal Sentence, finding that the circuit court properly exercised its authority to resentence Canosa to extended terms of imprisonment in counts 1 and 3, with each sentence to run concurrently.  First, the ICA concluded that the circuit court retained authority on remand in 2020 to resentence Canosa to extended terms "regardless of whether the time under an ordinary maximum sentence for his convictions would have expired by the time of resentencing."  According to the ICA, Canosa was never sentenced to "an ordinary maximum sentence under HRS § 706-660 for Counts 1 and 3[;]" instead, his sentences on Counts 1 and 3 "have always been for extended term sentences, including under the 2016 Judgment."  The ICA, citing State v. Keck, agreed with the circuit court's reasoning that when Canosa's second sentence under the 2016 judgment was vacated, "[h]is status, in essence, reverted to that of an unsentenced felon."  State v. Keck, Nos. 29530, 29531, 2010 WL

---

[9]    The ICA held oral argument on April 20, 2022.

14

4491240, at *1 (Haw. App. Nov. 10, 2010). The ICA further noted Canosa's failure to cite—and the ICA's failure to find—any authority supporting the proposition that "a defendant's sentence automatically defaults to the statutory maximum term for the convicted crime when the defendant's consecutive extended sentences have been vacated and the case is remanded for resentencing."

Second, the ICA found Canosa's double jeopardy argument to be without merit. The ICA distinguished Canosa's case from Lange,[10] and cited Jones v. Thomas for the proposition that "the Double Jeopardy Clause prohibits punishment in excess of that authorized by the legislature[.]". Jones v. Thomas, 491 U.S. 376, 383 (1989) (citing United States v. DiFrancesco, 449 U.S. 117, 139 (1980)). The ICA reasoned that since HRS § 706-662 authorized extended sentencing for counts 1 and 3, and because a jury made the necessary findings such that extended sentences for counts 1 and 3 were proper, the circuit court's sentence was not in excess of statutory authority. On that basis, and pursuant to the law of the case under Canosa II, the ICA concluded that Canosa was not punished for the same crime twice.

---

[10]    The ICA argued that unlike Canosa's case, the statute at issue in Lange authorized the imposition of only one of two alternative sentences, but that the defendant in Lange was ultimately subjected to both.

15

Third, the ICA rejected Canosa's contention that the plain language of HRS § 706-600 limited the circuit court's resentencing authority. Relying on State v. Haugen,[11] the ICA concluded that "it would be absurd for sentences to default to the statutory maximum term while defendants await resentencing upon successfully exercising their right to appeal, especially when a jury makes the necessary findings that a defendant meets the criteria for extended terms of imprisonment." State v. Haugen, 104 Hawai'i 71, 77, 85 P.3d 178, 184 (2004).

Having concluded the circuit court did not err in resentencing Canosa in 2020, the ICA thus concluded (without further analysis) that there was no error when the circuit court denied Canosa's motion to correct his sentence.

Finally, the ICA determined that Canosa's assertions of plain error were raised for the first time at oral argument and therefore waived pursuant to HRAP Rule 28(b)(4) and (7). With respect to Canosa's argument that the circuit court committed plain error by resentencing him to extended sentences without requiring the State to prove that he still remained a danger to the public at the time of resentencing, the ICA determined that Canosa "failed to raise this issue as a point of

_____

[11] The ICA cited to State v. Haugen, 104 Hawai'i 71, 77, 85 P.3d 178, 184 (2004) which concluded that an absurdity would result if the court applied a statute on sentencing for first-time drug offenders to a defendant with a prior drug conviction in another state.

error or provide any substantive argument, in violation of [HRAP] Rule 28(b)(4) and (7)[.]". The ICA then argued that United States v. Booker, 543 U.S. 220 (2005) was inapposite to Canosa's assertions, concluding that Booker does not invalidate Canosa's sentence on the basis that four years passed between the jury's determinations for extended sentencing and Canosa's 2020 resentencing.

Canosa's second argument that the ICA deemed waived was that he was prejudiced by the State's sixteen month delay in his resentencing after certiorari was denied on January 18, 2019, which resulted in adverse impacts on parole and his ability to obtain services while incarcerated (among other assertions). The ICA deemed this argument waived for purposes of this appeal, but without prejudice to Canosa raising it in a HRPP Rule 40 petition, finding that (1) Canosa never argued this claim before the circuit court, (2) there was no factual support for this claim in the record, and (3) the State had no ability to anticipate this claim being raised at oral argument.

The ICA affirmed the 2020 Amended Judgment and the Order Denying Motion to Correct Illegal Sentence, while noting that "Canosa may pursue his claim of prejudice due to the delay in his 2020 resentencing through a HRPP Rule 40 petition."

17

## C. Application for Writ of Certiorari

Canosa timely filed an application for writ of certiorari on August 5, 2022. In his application, Canosa argues that the ICA gravely erred in this "unique case of first impression" by:

1. reasoning that because a [j]ury on June 22, 2016, made the required factual findings under HRS [§] 706-662 (2014) that Petitioner is a persistent and multiple offender and that extended terms of imprisonment was necessary for the protection of the public, the resentencing court was, on June 4, 2020, upon remand for resentencing from Petitioner, authorized to resentence him to extended terms of imprisonment and,

2. for using that reasoning to affirm the Amended Judgment of conviction and sentence filed July 10[,] 2020, and the Order Denying Defendant's Motion to Correct Illegal Sentence pursuant to Rule 35(a) of the Hawaii Rules of Penal Procedure filed October 21, 2020 by the Circuit Court of the First Circuit, and thereby constitutes [sic] grave errors because it resulted in the violation of Petitioner's right to be free from the unlawful restraint of his liberty, in violation of the Fourteenth Amendment under the United States Constitution as he is still being held in prison on an illegal sentence.

First, Canosa argues that the ICA erred by affirming the circuit court's use of the 2016 jury's findings under HRS § 706-662 to impose extended terms of imprisonment beyond the ordinary terms of imprisonment prescribed by HRS § 706-660 for Counts 1 and 3. He argues that the circuit court no longer had authority to "use the jury's findings under HRS § 706-662 to extend the ordinary terms of imprisonment" because "those ordinary terms of imprisonment prescribed by HRS § 706-660 for both his convictions [(ten years for Count 1, five years for

18

Count 3)] were already expired before the resentencing court could extend it beyond its statutorily prescribed range."

Canosa further argues that "the ICA knew and/or should have known" the following: (1) "that when a court imposes an extended term of imprisonment[,] what the court extends from, and beyond, is the ordinary terms of imprisonment (statutory maximum penalty) prescribed by HRS [§] 706-660"; (2) "by the time [Canosa] was resentenced on June 4, 2020, the ordinary terms of imprisonment prescribed by HRS [§] 706-660 for both his [b]urglary conviction (count 1) and his unauthorized entry in a [d]welling conviction (count 3) had already expired on September 22, 2019, and September 22, 2014, respectively"; (3) "the State's and/or resentencing court's unreasonable delay to comply with the remand order for resentencing . . . had allowed the ordinary terms of imprisonment prescribed by HRS [§] 706-660 to expire"; (4) "during [Canosa]'s resentencing on June 4, 2020, he argued that the extended terms cannot be imposed because the ordinary maximum terms had already expired"; and (5) "[Canosa]'s contention for [the ICA's] review on appeal was that the circuit court erred by extending the ordinary terms of imprisonment prescribed by HRS [§] 706-660 for both his [b]urglary conviction (count 1) and his unauthorized entry in a [d]welling conviction (count 3) without being authorized by statute."

19

Canosa further contends that (1) "there [is] no tolling period for the ordinary terms of imprisonment prescribed by HRS [§] 706-660" and (2) "there is no language under HRS [§] 706-662 or any other statute that authorized the resentencing court on June 4, 2020 to extend the already expired ordinary terms of imprisonment prescribed under HRS § 706-660[.]"

Canosa also contests the ICA's agreement with the circuit court's reasoning that when Canosa's sentence was vacated and remanded for sentencing Canosa's status reverted to that of an unsentenced felon. Here, Canosa repeats his arguments that the ICA "knew and/or should have known" that once the ordinary terms of imprisonment for counts 1 and 3 expired, it was "impossible to extend" those terms beyond their "statutorily prescribed range[s]." Canosa further contends that the ICA "knew and/or should have known" that "the resentencing court's only duty and obligation during resentencing was to declare time served, *nunc pro tunc*, because no other sentence could be imposed in accordance with HRS § 706-600 (2014), which states, "[n]o sentence shall be imposed otherwise than in accordance with this chapter."

Canosa concludes that the ICA therefore should have reversed the order denying Canosa's motion to correct illegal sentence, and subsequently corrected his sentence to reflect time served, *nunc pro tunc*, on the expiration dates of the

20

ordinary terms of imprisonment prescribed by HRS § 706-660 for counts 1 and 3, and asks this court "to correct his illegal sentence"; he requests this court to "order his release from the unlawful restraint of his liberty."

The State did not file a response to the application. Canosa's application for writ of certiorari was accepted.

### III. STANDARDS OF REVIEW

#### A. Sentencing

> A sentencing judge generally has broad discretion in imposing a sentence. The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. Factors that indicate a plain and manifest abuse of discretion are arbitrary or capricious actions by the judge and a rigid refusal to consider the defendant's contentions. In general, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

State v. Tauiliili, 96 Hawai'i 195, 198, 29 P.3d 914, 917 (2001) (internal quotation marks, citations, and brackets omitted).

#### B. Motion to Correct Sentence

A circuit court's denial based on a conclusion of law, of a defendant's HRPP Rule 35 motion to correct illegal sentence is reviewed de novo, under the right/wrong standard of review. Questions of constitutional law and statutory interpretation are reviewed under the same standard. State v. Kido, 109 Hawai'i 458, 461, 128 P.3d 340, 343 (2006).

C.    Constitutional Questions

"We review questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case." State v. Phua, 135 Hawai'i 504, 511-12, 353 P.3d 1046, 1053-54 (2015). Therefore, we review questions of constitutional law under the right/wrong standard. Id.

IV. DISCUSSION

Canosa argues that he was prejudiced by the State's sixteen-month delay in his sentencing after certiorari was denied on January 18, 2019. The ICA deemed this argument waived for purposes of this appeal, finding that (1) Canosa never argued this claim before the circuit court, (2) there was no factual support for this claim in the record, and (3) the State had no ability to anticipate this claim being raised at oral argument before the ICA. The ICA erred in its waiver analysis and conclusion.

As discussed infra in section IV.A.3, the record clearly reflects that Canosa raised his prejudice argument before the circuit court on June 4, 2020, both in writing and with oral argument. The State and the circuit court thus had notice of Canosa's prejudice claim. In addition, the record does contain factual support for Canosa's claim, as the Barker analysis below makes clear. Canosa's prejudice claim was not waived. As the ICA erred on these points, the ICA also erred in

22

affirming the circuit court's 2020 Amended Judgment and the Order Denying Motion to Correct Illegal Sentence.

For reasons set forth below, we find that the unreasonable delay of Canosa's sentencing deprived Canosa of due process, and sentencing proceedings that were fundamentally fair.

**A.    The government's unreasonable delay of Canosa's sentencing deprived Canosa of due process and sentencing proceedings which were fundamentally fair.**

Canosa correctly contends that the sentencing in this case has been delayed to the degree that he has been deprived of his right to due process pursuant to article 1, section 5 of the Hawai'i Constitution and the Fourteenth Amendment to the United States Constitution.

In Betterman v. Montana, 578 U.S. 437 (2016), the Supreme Court explicated the due process rights and liberty interests of convicted individuals with respect to delay in sentencing proceedings:

> [A]t the third phase of the criminal-justice process, *i.e.*, between conviction and sentencing, the Constitution's presumption-of-innocence-protective speedy trial right is not engaged.  That does not mean, however, that defendants lack any protection against undue delay at this stage. The primary safeguard comes from statutes and rules. The federal rule on point directs the court to "impose sentence without unnecessary delay."  Fed. Rule Crim. Proc. 32(b)(1) .... Further, as at the prearrest stage, due process serves as a backstop against exorbitant delay .... After conviction, a defendant's due process right to liberty, while diminished, is still present. He retains an interest in a sentencing proceeding that is fundamentally fair.

23

578 U.S. at 447-48 (emphasis added).  Further, the court noted

that "[f]or inordinate delay in sentencing, although the Speedy

Trial Clause does not govern, a defendant may have other

recourse, including, in appropriate circumstances, tailored

relief under the Due Process Clauses of the Fifth and Fourteenth

Amendments."  Id. at 439 (emphasis added).

        In her concurring opinion, Justice Sotomayor suggested

using the test the Court applies to violations of the Speedy

Trial Clause set out in Barker v. Wingo, 407 U.S. 514 (1972):

> [I]t seems to me that the *Barker* factors capture many of
> the concerns posed in the sentencing delay context and that
> because the *Barker* test is flexible, it will allow courts
> to take account of any differences between trial and
> sentencing delays.  The majority of the Circuits in fact
> use the *Barker* test for that purpose. See *United States v.*
> *Sanders,* 452 F.3d 572, 577 (C.A.6 2006) (collecting cases).
> In the appropriate case, I would thus consider the correct
> test for a Due Process Clause delayed sentencing challenge.

578 U.S. at 451 (Sotomayor, J., concurring) (internal

citation omitted)(emphasis added).

        This court has long relied on the Barker factors for

analyzing violations of speedy trial rights.  See State v. Lau,

78 Hawai'i 54, 62, 890 P.2d 291, 299 (1995).  Under

the Barker test, courts consider four factors: (1) the length of

the delay, (2) reasons for the delay, (3) the defendant's

assertion of his right, and (4) prejudice to the defendant.  Id.

Justice Sotomayor notes that "[n]one of the four factors is

'either necessary or sufficient,' and no one factor has a

24

'talismanic qualit[y].'"  Betterman, 578 U.S. at 451 (citing

Barker, 407 U.S. at 533).

We now adopt the Barker factors for analyzing

violations of due process in the delayed sentencing context.

### 1.    Length of the delay

On April 20, 2018, the ICA vacated Canosa's illegal

sentence and remanded for sentencing.  On November 15, 2018, the

ICA issued its judgment on appeal ordering the same.  Canosa

applied for a writ of certiorari, which this court rejected on

January 18, 2019.  The length of delay from this court's January

18, 2019 denial of certiorari until Canosa's June 4, 2020

sentencing is sixteen months and seventeen days.  The Betterman

court—faced with a fourteen-month delay in sentencing—found

that "a defendant's due process right to liberty, while

diminished, is still present" and that "he retains an interest

in a sentencing proceeding that is fundamentally fair."  578

U.S. at 447–48.  In the speedy trial context, this court has

considered a delay of seven months sufficient to trigger an

inquiry into the other Barker factors.  See State v. Almeida, 54

Haw. 443, 509 P.2d 549 (1973).  Here, Canosa's sentencing delay

of sixteen months and seventeen days is especially striking in

that it encompassed the expiration of the ordinary statutory

terms on September 22, 2019, thus depriving Canosa of a

proceeding on remand wherein he could present argument and

allocution asking for an ordinary maximum term.  On these facts, the length of delay in Canosa's sentencing is sufficient to warrant an inquiry into the remaining Barker factors.

**2.    Reasons for the delay**

Canosa contends that the State and/or the circuit court caused an unreasonable delay in complying with the ICA's remand order for sentencing.  The State admitted at oral argument before this court[12] that Canosa's sentencing "slipped through the cracks."  The State further conceded that it "looked at the record" and that "there doesn't seem to be an explanation for why it happened."  The State went on to explain the process for sentencing on remand, noting that "when a case is sent down and remanded for resentencing it is typically the circuit court that puts it on [the] calendar and sets it, or [The State] will ask for a status for the case to be set."  During the June 4, 2020 sentencing hearing, the circuit court also acknowledged that "there was a delay from the time that the Supreme Court rejected certiorari from January 2019 to the time we began to try to reschedule this resentencing[,]" and acknowledged to Canosa "it's unfortunate that the delay occurred."

This acknowledgement of shared responsibility across the State and the circuit court for calendaring Canosa's

---

[12]    Oral argument was held on October 18, 2022.

26

sentencing on remand leads to the conclusion that unexplained government inaction caused the delay in the instant case.

State v. Visintin summarizes how this court, in accordance with the United States Supreme Court's decision in Barker, analyzes whether the government's reason(s) for delay violate a defendant's constitutional rights. See State v. Visintin, 143 Hawai'i 143, 159, 426 P.3d 367, 383 (2018). When the government's delay deliberately attempts to hamper the defense, that will be weighed heavily against the government. Id. (internal citations omitted). When the reason behind the government's delay is more "neutral" such as "negligence or overcrowded courts" this factor should be "weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Id. (quoting Barker, 407 U.S. at 531). On that basis, this court has held that when a government delay results from a more neutral reason, the second Barker factor weighs in favor of the defendant. Id. See also Lau, 78 Hawai'i at 63, 890 P.2d at 300 (determining that the "more neutral" reason of court congestion "still tips the scales in favor of [the defendants][.]"). Here, the State concedes that Canosa's sentencing "slipped through the cracks" and that the record is devoid of any explanation as to why. This reason for the government's delay falls within the more

neutral "negligence" category. Because the government was negligent in causing the delay, and because the record reflects no amount of the delay is attributable to Canosa, this factor must be weighed against the State and in favor of Canosa.

### 3. Assertion of the right

Applying the Barker factors in the speedy trial context, this court has held that the State, not the defendant, has the duty to bring about the commencement of proceedings:

> [A] defendant has no duty to bring himself [or herself] to trial; the [S]tate has that duty." State v. Wasson, 76 Hawai'i 415, 420, 879 P.2d 520, 525 (alterations in original) (quoting Barker, 407 U.S. at 527). "Thus, a defendant does not waive his or her right to a speedy trial by failing to demand one." Id. (citing Barker, 407 U.S. at 526). However, the assertion of the right to a speedy trial "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Id. (quoting Barker, 407 U.S. at 531-32, 92 S.Ct. 2182).

Visintin, 143 Hawai'i at 160, 426 P.3d at 384 (internal citations cleaned up).

We now apply these principals in analyzing Canosa's assertion of his rights with respect to his delay in sentencing.

The record reflects that Canosa asserted his right to be sentenced without unreasonable delay in a written objection to sentencing filed on the morning of June 4, 2020. Canosa asserted that the State's failure and/or unreasonable delay to sentence him prior to the September 22, 2019 expiration of the ordinary maximum term deprived him of his due process rights

28

under article 1, section 5 of the Hawai'i Constitution and the Fourteenth Amendment to the United States Constitution.

Further, Canosa testified at the June 4, 2020 sentencing hearing that he wrote a letter to his attorney before the September 2019 expiration of the ordinary terms of his sentence, asking why he wasn't being sentenced. Canosa offered the letter to the court, which declined to consider it in the following exchange:

> THE DEFENDANT: And I could have had one chance to persuade you; right? One fair opportunity to persuade you to give me that, at least consider it. But now I cannot have one fair opportunity to do that because that expired.
>
> But you know what else? I wrote to my lawyer. I wrote to my lawyer before September, before the ordinary terms expired asking him, eh, how come I not getting sentenced? I like present this so I can convince you to just give me the 10 and the 5 and run 'em concurrent. I get one letter right here. You want to see it?
>
> THE COURT: No, sir. It's not part of what I can consider today. Okay?

In addition to this court's recognition that it is the State's duty to bring a defendant to trial, and that a defendant has no duty to demand one, this court has also recognized that a defendant's failure to assert speedy trial rights shall not weigh against them where "there appears to have been no conventional forum in which [defendant] could have asserted the right[.]" Visintin, 143 Hawai'i at 161, 426 P.3d at 385.

In Visintin, this court recognized that for the period of seven months during which time the defendant's status was

29

post-arrest and preindictment, there "[did] not appear to have been any standard legal proceeding in which Visintin could have demanded a speedy trial." Id. Here, as in Visintin, there does not appear to have been any standard legal proceeding in the record during the sixteen months and seventeen days leading up to the June 4, 2020 sentencing where Canosa could have asserted his right to be sentenced without unreasonable delay. Additionally, it was reasonable for Canosa to presume that there would be such a proceeding, at least in the form of a sentencing hearing, prior to the September 22, 2019 expiration of the ordinary maximum sentence that he was eligible to receive.[13] The State failed to provide one. As such, the June 4, 2020 proceeding was the first conventional forum in which Canosa could assert his rights since this court's denial of certiorari on January 18, 2019. A closer look at Canosa's remand timeline proves useful in analyzing Canosa's opportunity to assert his rights to be sentenced without undue delay.

HRPP Rule 32(a) provides that "[a]fter adjudication of guilt, sentence shall be imposed without unreasonable delay." Canosa was therefore entitled to the reasonable presumption that when his illegal sentence was vacated and remanded on April 20,

---

[13]    Because we conclude the State's unreasonable delay in sentencing deprived Canosa of due process, we need not reach Canosa's remaining points of error, including Canosa's claims with respect to the expiration of the ordinary terms.

30

2018, he would have the opportunity to be sentenced before the September 22, 2019 expiration of his ordinary maximum term (approximately seventeen months later).  It is also reasonable that this court's denial of certiorari on January 18, 2019 would only strengthen Canosa's presumption that he would be sentenced prior to September 22, 2019, and that he would be afforded a proceeding and an allocution prior to that date, during which time he could argue for an ordinary maximum term.  As a convicted felon awaiting sentencing who had exhausted his appeals, no other proceeding would be reasonably foreseeable.  In this respect, Canosa did not have a need to assert his right to be sentenced without unreasonable delay prior to September 22, 2019.  As such, it would be error to weigh Canosa's failure to assert his right to be sentenced against him where there was (a) no conventional forum in which Canosa could do so, and (b) prior to September 22, 2019, no apparent basis for Canosa to do so.

On these grounds, and in accordance with <u>Visintin</u>, Canosa did assert his rights on June 4, 2020, and any failure to assert his right to be sentenced prior to June 4, 2020 shall not weigh against him.

We now turn to the State's argument that Canosa's sentencing delay should not be considered by this court as an actual or appearance of injustice because Canosa's counsel

31

stated before the ICA that counsel did not need to bring attention to the sentencing delay for strategic reasons. With respect to counsel's statement, this alone is not dispositive in resolving this factor against Canosa. First, it was the State's duty, and not Canosa's, to ensure Canosa was sentenced without unreasonable delay. Second, Canosa's testimony regarding his letter to counsel, along with Canosa's offering of the letter to the court, evinces Canosa's desire to assert his rights with respect to being sentenced prior to the expiration of the ordinary maximum terms. Third, the transcript from the June 4, 2020 sentencing hearing makes clear that Canosa was in strong disagreement with his counsel's strategy and arguments, and that Canosa explicitly told the court his counsel was not arguing for him during that proceeding:

> THE DEFENDANT: <u>Your Honor</u> -- (inaudible). <u>Excuse me one minute</u>. I understand what you're saying, <u>but he not arguing, you know, for me. That's why I gotta speak on my behalf</u>.
>
> THE COURT: Sir, I've read your objections. I let you talk today briefly. I understand what you're saying. I'm going to rule. Okay?
>
> THE DEFENDANT: <u>How can I have one fair opportunity to argue myself? He not arguing for me</u>.

Canosa's repeated on-the-record rejection of and departure from his counsel's arguments and strategy has relevance when determining to what extent counsel's strategy remark should weigh against Canosa in resolving this factor. In this regard, the weight to be given counsel's strategy statement

32

is less than perhaps it otherwise would be, though it does place a thumb on the scale for the government.

We now turn to the balancing of this factor, and begin with summarizing the issues that favor each party.

The issues that favor Canosa are: (1) Canosa asserted his due process rights to be sentenced without unreasonable delay in his written objection to sentencing filed on June 4, 2020, which was the first standard legal proceeding afforded to Canosa since this court's January 18, 2019 denial of certiorari; (2) Canosa's time on remand awaiting sentencing appears to have lacked any other standard legal proceeding through which Canosa could have asserted his right to be sentenced without unreasonable delay; (3) Canosa had no duty to demand he be sentenced; (4) the State did have a duty to sentence Canosa without unreasonable delay; and (5) Canosa's testimony about his letter to counsel, which he offered to the court for consideration, evinces his intent to be sentenced prior to September 22, 2019.

For all the above reasons, the third Barker factor would tip squarely in Canosa's favor if not for counsel's strategy comment. This court finds that counsel's strategy comment cannot be imputed to Canosa, who demonstratively distanced himself from counsel's arguments during the June 4, 2020 sentencing hearing and pleaded with the court to consider

33

his prior correspondence with counsel seeking a timely sentencing. Compare Barker, 407 U.S. at 535 (finding that the record strongly suggested the defendant "hoped to take advantage of the delay [in trial] in which he had acquiesced and thereby obtain a dismissal of the charges" but that the defendant "definitely did not want to be tried"). Because Canosa's assertion of his rights on June 4, 2020 is entitled to strong evidentiary weight, and in view of all the other issues weighing in Canosa's favor, the third Barker factor—the timeliness of Canosa's assertion of undue delay—weighs in favor of Canosa.

### 4. Prejudice to the defendant

We now turn to the fourth Barker factor to determine whether the delay in sentencing prejudiced Canosa. In Barker, the United States Supreme Court analyzed prejudice by placing a premium on whether the delay impaired the defense:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

Barker, 407 U.S. at 532 (footnote omitted)(emphasis added).

Given the seriousness of Canosa's liberty interest at stake, we begin with analysis of the third interest enumerated in Barker.

34

Canosa contends that the government's undue delay in sentencing prejudiced him with respect to parole considerations, and deprived him of his constitutional right to allocution. With respect to parole considerations, Canosa argues that the unreasonable delay in sentencing prejudiced him by delaying his ability to commence mandatory minimum term proceedings with the Hawai'i Paroling Authority ("HPA"), which in turn impaired his ability to access rehabilitative programming, and extended the time he would be ineligible for rehabilitative services. Canosa's argument has merit. It is axiomatic that an undue delay in sentencing necessitates a corresponding undue delay in commencing proceedings with the HPA. This court agrees that the State's delay in sentencing Canosa effected a corresponding delay in Canosa's proceedings with the HPA, which substantially prejudiced Canosa by impairing his ability to obtain a mandatory minimum term and commence rehabilitative services.

With respect to allocution, a convicted defendant is guaranteed the right of allocution pursuant to the due process clause, article 1, section 5, of the Constitution of the State of Hawai'i, and as enshrined in HRPP Rule 32(a) and HRS § 706-604(1).[14]  See State v. Carlton, 146 Hawai'i, 16, 25, 455 P.3d

---

[14]  See Carlton, 146 Hawai'i at 25, 455 P.3d at 365 ("It is the duty of the trial court to directly address the defendant and ensure the

(continued . . .)

35

356, 365 (2019).  This court has held that in order for the right of allocution to be meaningful, a defendant must be afforded an opportunity to exercise the right at a meaningful time and in a meaningful manner, as follows:

> As stated, the right of presence allocution is an important constitutional right guaranteed under the due process clause of the Hawai'i Constitution. State v. Hernandez, 143 Hawai'i 501, 509, 431 P.3d 1274, 1282 (2018). We have observed that "procedural due process requires that a person have an 'opportunity to be heard at a meaningful time and in a meaningful manner.'" In re Application of Maui Elec. Co., 141 Hawai'i 249, 269, 408 P.3d 1, 21 (2017) (quoting Freitas v. Admin. Dir. of Courts, 108 Hawai'i 31, 44, 116 P.3d 673, 686 (2005)). As a due process right, a defendant's right of allocution is violated if the court fails to afford the defendant an opportunity to exercise the right at a meaningful time and in a meaningful manner. See, e.g., State v. Carvalho, 90 Hawai'i 280, 286, 978 P.2d 718, 724 (1999) (a sentencing court must afford a defendant the right of presence allocution "before ruling on the applicability of the young adult defendants statute"). In order to be meaningful, the opportunity for allocution must be reasonably calculated to achieve its purposes of providing the defendant with an opportunity to plead for mitigation, contest the factual bases for sentencing, and acknowledge wrongdoing. See State v. Chow, 77 Hawai'i 241, 250, 883 P.2d 663, 672 (App. 1994).

Carlton, 146 Hawai'i at 25-26, 455 P.3d at 365-66. (internal citations cleaned up).

---

(. . . continued)

defendant's right of allocution is upheld. See State v. Schaefer, 117 Hawai'i 490, 498, 184 P.3d 805, 813 (App. 2008) ("We know of no effective or adequate manner in which a defendant's right of presence allocution may be constitutionally realized than to affirmatively require that the trial court make direct inquiry of the defendant's wish to address the court before sentence is imposed." (quoting Chow, 77 Hawai'i at 247, 883 P.2d at 669)). This duty is also imposed on the trial court by the language of HRS § 706-604(1), which, as noted above, provides that "the court shall afford a fair opportunity to the defendant to be heard on the issue of the defendant's disposition." (Emphasis added.) HRPP Rule 32(a) uses similar mandatory language, instructing that "before suspending or imposing sentence, the court shall address the defendant personally."(emphasis in original).

Here, a review of the record in the instant case makes clear that Canosa was deprived of his constitutional right to allocution at a meaningful time and in a meaningful manner by the State's failure to sentence Canosa prior to the expiration of the ordinary terms.

As discussed herein under the third <u>Barker</u> factor, Canosa was entitled to the reasonable presumption that when his illegal sentence was vacated and remanded on April 20, 2018, he would be resentenced before the September 22, 2019 expiration of his ordinary maximum term (approximately seventeen months later). The alternative scenario makes the reasonability of this presumption plainly evident: should the State fail to impose sentence by that time, it would create the unusual situation whereby a sentencing court, empowered to use its discretion to impose an ordinary maximum term, would find that the defendant had already been materially detained beyond it. Such a circumstance may deprive the defendant's sentencing proceedings of the appearance of justice, where a sentencing court faced with such a dilemma may be perceived as having been constrained by these facts to impose extended terms, or—even more unjust—actually doing so. Such circumstances may also suggest that the only way to preserve the appearance of justice under these facts would be to impose the ordinary maximum term and acknowledge the State's error of over-detention. This too

37

is inadequate, as the court may also feel constrained in so doing, and desire to impose extended terms but dare not for concern with respect to the optics of injustice.

For these reasons and more, the instant case raises this court's concern that Canosa has not received the appearance of justice, and was deprived of sentencing proceedings that were fundamentally fair.

The State had nine months from the denial of certiorari, and seventeen months from the ICA's judgment on appeal, to sentence Canosa prior to the expiration of his ordinary terms. That the government failed to do so because of neglect brings the unreasonable nature of Canosa's delay in sentencing into sharp relief.

This unreasonable delay in sentencing Canosa prejudiced Canosa and deprived him of his right to allocution and argument for receiving an ordinary term before it expired. Canosa (1) had served nearly ten years of imprisonment; (2) was on remand awaiting sentencing following the vacatur of his illegal sentence, with a new opportunity to be sentenced to an ordinary maximum term; and (3) faced the prospect of an additional decade of imprisonment should he be unable to persuade the resentencing court to impose the ordinary term. His right of allocution was an opportunity to marshal resources to prepare for an effective allocution aimed at protecting his

serious liberty interest in the decade that hung in the balance. Without any notice, and without any justification, the State impaired Canosa's defense by allowing the expiration of Canosa's ordinary maximum term to elapse prior to sentencing.

Thus, the State's failure to provide Canosa the opportunity for allocution prior to the expiration of the ordinary term is evidence of the State's failure to provide allocution in a "meaningful time" and a "meaningful manner." Canosa's right to allocution was constitutionally impaired, satisfying the third and most critical prong of this prejudice factor. The weight of this finding renders analysis of the other two prongs, oppressive incarceration and anxiety, unnecessary.

The record plainly demonstrates that the State's undue delay in sentencing prejudiced Canosa with respect to parole considerations, and deprived him of his constitutional right to allocution.

5.   **Balance of the factors**

Canosa has been subject to a sentencing delay of sixteen months and seventeen days that deprived him of his right to allocution and a sentencing proceeding that was fundamentally fair. The government was negligent in allowing Canosa's sentencing to "slip through the cracks," and while this is a more neutral reason than an intentional delay, it still weighs

in Canosa's favor.  Canosa asserted his rights to be sentenced without unreasonable delay, and even if we were to find that Canosa bears some responsibility for the situation in that his counsel stayed silent and failed to request a timely sentencing prior to June 4, 2020, the facts remain that (1) Canosa has no obligation to ask to be sentenced, and (2) the State failed to fulfill its duty to sentence Canosa in a timely manner.  Further, the prejudice here is truly significant and materially impaired Canosa's defense, as Canosa (1) was unable to commence proceedings with the HPA and remained ineligible for rehabilitative services, and (2) was not afforded the opportunity for allocution in a meaningful time, and in a meaningful manner, where an additional decade of imprisonment was at stake.

We conclude that in light of the reasons for the delay and the prejudice established by Canosa, and considering all the circumstances, the delay in Canosa's resentencing violated the due process clause under article 1, section 5 of the Hawaiʻi Constitution and the Fourteenth Amendment to the United States Constitution.  In so finding, we do not need to reach Canosa's remaining points of error.

We highlight the narrowness of this holding.  This is an unusual case where the chronology and facts compel the conclusion that Canosa's rights were violated for the reasons

40

set forth herein.  This court's finding that Canosa's due process rights were violated by the unreasonable delay in sentencing constitutes the third instance of government error in the Canosa trilogy:  Canosa I was vacated and remanded for retrial on prosecutorial misconduct grounds; Canosa II vacated an illegally severe sentence and remanded for sentencing; and Canosa III finds Canosa was deprived of due process with respect to unreasonable delay in sentencing, as well as with respect to allocution rights.

### 6.    Remedy for the violation

There being a clear due process violation with respect to defendant's sentencing, pursuant to this court's authority under Hawai'i Revised Statutes § 602-5(a)(6)(2016) to "take such other steps as may be necessary . . . for the promotion of justice in matters pending before it," the Petitioner is to be released from State custody forthwith, and the remainder of his sentence is vacated.

### V.    CONCLUSION

For the foregoing reasons, the ICA's June 6, 2022 Judgment on Appeal is vacated.  Petitioner is to be released from State custody forthwith.  The case is remanded to the circuit court to enter an order (1) vacating its Order Denying Defendant's HRPP Rule 35(a) Motion to Correct Illegal Sentence and (2) amending its July 10, 2020 Amended Judgment of

41

Conviction and Sentence to reflect time served, *nunc pro tunc*

from the date of Petitioner's release.

Shawn A. Luiz,
for Petitioner

Stephen K. Tsushima,
for Respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna



/s/ Michael D. Wilson

/s/ Todd W. Eddins